[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-14962
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 16, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00270-CV-CG-M

LISA D. HAMMONS,

                                                       Plaintiff-Appellant,

versus

GEORGE C. WALLACE STATE COMMUNITY COLLEGE,
JAMES D. MITCHELL,

                                                       Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 16, 2006)

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

     Lisa D. Hammons, a white female, appeals the district court's grant of

summary judgment to her former employer, George C. Wallace State Community

College ("Wallace State"), and the college president, James M. Mitchell

("Mitchell"), an African-American, in her action alleging race discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a), 3(a).[1] On appeal, Hammons argues: (1) she established a prima facie case of race discrimination, based on disparate treatment, because she identified two similarly situated employees, outside her protected class, who were treated more favorably; and (2) she stated a prima facie case of retaliation based on being terminated for filing a written complaint against Mitchell and showing that Wallace State's proffered nondiscriminatory, legitimate reasons were false and not the true reason for her termination. After careful review, we affirm.

I.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light more favorable to the party opposing the motion. Patrick v. Floyd Med. Ctr., 201 F.3d 1313, 1315 (11th Cir. 2000). Rule 56(c) states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, of any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). To warrant the entry of summary judgment, the moving party must

---

[1] Hammons does not appeal the district court's entry of summary judgment, in favor of the defendants, on her claims for breach of contract, sex discrimination, violation of due process, and fraud. Accordingly, those claims are deemed abandoned. See United States v. Scott, 426 F.3d 1324, 1328 (11th Cir. 2005).

2

demonstrate that "there is no genuine issue as to any material fact." HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 991 (11th Cir. 2001). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

## II.

The parties are familiar with the relevant facts and we only summarize them here. Hammons served as the Dean of Students at Wallace State from January 2, 2001 through August 31, 2003. In her capacity as Dean of Students, she was responsible for the general oversight of the Division of Student Services, which included the Admissions Office, the Registrar's Office, Student Support Services, Talent Search, the Financial Aid Office, the Athletic Department, and ADA compliance. Hammons directly supervised approximately ten staff members, including Corey Bowie, the director of the Financial Aid Office. In the course of her employment, numerous problems arose both in the Registrar's Office, relating to the organization of students' registration, and in the Financial Aid Office, including Hammons's improper submission of the college's bank account number in connection with an electronic funds transfer, the tardy submission of students' applications for Pell Grant funds, and the over-award of funds to work-study

3

students.  Hammons was informed on May 31, 2003 that her contract would not be renewed for the 2003-2004 academic year and she was placed on academic leave with pay until the expiration of her contract on August 31, 2003.  She was replaced by Dr. Gail May, a white female.

On April 26, 2004, Hammons filed a five-count complaint against Wallace State, a publicly funded educational institution of the State of Alabama, and Mitchell (collectively, "Defendants").  In relevant part, Hammons alleged that (1) Wallace State violated Title VII by discriminating against her in the terms, conditions, and privileges of her employment because of race; and (2) Defendants violated Title VII by retaliating against her through harassment and termination after she complained to the Chancellor of the Alabama Department of Post Secondary Education ("Chancellor").  Defendants answered with numerous denials, and defenses.

After discovery, Defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56.  They argued that: (1) Hammons could not establish a prima facie case of race discrimination because she did not identify a similarly situated comparator and because she was replaced by a white female; (2) Hammons did not assert a prima facie case of retaliation because she never communicated to Mitchell, or anyone else, including in her letter to the Chancellor, that she opposed

4

any unlawful conduct, and she could not establish a causal link between her filing of an EEOC charge and the alleged retaliation against her. Alternatively, Defendants asserted that they had proffered legitimate, nondiscriminatory reasons for not renewing Hammons's contract and Hammons had not met her burden to show that the proffered reasons were pretextual in nature.

The district court granted Defendants' motion for summary judgment, finding that Hammons had not demonstrated a prima facie case of racial discrimination based on disparate treatment because: (1) she was not replaced by someone outside her protected class -- Dr. May also was a white female; and (2) neither of Hammons's proposed comparators were similarly situated employees outside her class that were treated more favorably. In connection with this conclusion, the court found that proposed comparator Bowie, a black male, was not similarly situated because he was Hammons's subordinate and not an at-will employee. The court further found that proposed comparator Bonita Allen, the Dean of Business and Financing, a black female, was not similarly situated because she was responsible for a different department in which only some of the problems attributed to Hammons occurred, and like Bowie, she was not an at-will employee, but was tenured. Alternatively, the district court found that even if Hammons had established a prima facie case of racial discrimination, she was not able to show

5

that Wallace State's non-discriminatory reason for its refusal to renew her employment contract was merely pretext.

As for Hammons's retaliation claim, the district court first determined that her December 17, 2002 letter to the Chancellor, which broadly referred to "harassment" and "disparate treatment," was not statutorily protected expression because it did not describe conduct that was alleged to be racially or sexually motivated. The district court further found that Hammons did not establish a prima facie case of retaliation because she had not shown that the adverse action -- on May 31, 2003, when she was placed on administrative leave and informed her contract would not be renewed -- was causally related to the December 17, 2002 letter. Finally, like the disparate-treatment claim, the court concluded that even if Hammons established a prima facie case, she failed to show pretext. This appeal followed.

### III.

Title VII makes it unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a). Because Hammons relies on circumstantial evidence to establish her disparate-treatment

6

claim, we test the sufficiency of that claim by applying the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

Under the McDonnell Douglas framework, a plaintiff first must show an inference of discriminatory intent, and thus carries the initial burden of establishing a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. The plaintiff's successful assertion of a prima facie case "creates a rebuttable presumption that the employer unlawfully discriminated against her." E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002) (citing U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)). If the plaintiff successfully demonstrates a prima facie case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason. See Joe's Stone Crabs, 296 F.3d at 1272. "Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." Id. at 1272-73 (quoting Burdine, 450 U.S. at 255-56). "Although the intermediate burdens of production shift back and forth, the ultimate burden of

persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." Id. at 1273.

The district court found that Hammons did not satisfy her initial burden to establish a prima facie case of discrimination. To do so, she was required to show: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1289 (11th Cir. 2003). The instant appeal concerns only the fourth element of the prima facie case since the parties do not dispute that Hammons satisfied the other elements.

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). To show that employees are similarly situated, the plaintiff must establish that the employees are "similarly situated in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). The comparator must be

"nearly identical" to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer. Id.

On this record, Hammons failed to establish the fourth prong of her prima facie case. First, she was replaced by someone within her protected class. Dr. May, a Caucasian female, replaced Hammons as interim Dean of Students during the one-year period following her administrative leave and, after a year-long search, Dr. May was selected as the permanent Dean of Students. Moreover, the district court found that Hammons had not identified similarly situated comparators. Dean Allen was not directly responsible for the Financial Aid Office, where Hammons had oversight responsibilities and where the majority of the incidents leading to Hammons's termination took place. Notably, Dean Allen was not an at-will employee like Hammons. And Bowie, the director of Financial Aid, was Hammons's subordinate whose only responsibility included the duties of the Financial Aid Office. He too was not an at-will employee. Wallace State's reasons for placing Hammons on administrative leave with full pay through her contract term and failure to renew her employment contract extended beyond issues in the Financial Aid Office, and neither Allen nor Bowie were responsible for, or in any way involved in, those other problems. Simply put, neither of these proposed comparators was "similarly situated in all relevant respects" or "nearly

identical" to Hammons. See Wilson, 376 F.3d at 1091. Accordingly, the district court did not err by finding Hammons failed to meet the fourth prong of her prima facie disparate-treatment claim.[2]

IV.

We likewise affirm the district court's entry of summary judgment on Hammons's retaliation claim. Title VII prohibits an employer from discriminating against any of his employees because she has opposed any practice made an unlawful employment practice. 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, the plaintiff must show: (1) that [she] engaged in statutorily protected expression; (2) that [she] suffered an adverse employment action; and (3) that there is some causal relationship between the two events."

---

[2]We are not persuaded by Hammons's additional argument that she established a prima facie case through other circumstantial evidence by which a discriminatory animus could be inferred. For this argument, Hammons relies on Schoenfeld v. Babbitt, 168 F.3d 1257, 1268 (11th Cir. 1999), for the proposition that in a disparate-treatment case, a plaintiff satisfies her prima facie case requirement with proof of actions taken by the employer from which a trier of fact could infer discriminatory animus. Even assuming arguendo that Hammons established a prima facie case through such evidence, summary judgment was still appropriate on her disparate-treatment claim because she did not rebut Wallace State's proffered nondiscriminatory, legitimate reason for its decision to place her on administrative leave and not to renew her employment contract. And thus, pursuant to the McDonnell Douglas formulation, Wallace State still would be entitled to summary judgment. As the district court found, Wallace State rebutted any presumption of discrimination by proffering legitimate, nondiscriminatory reasons for placing Hammons on administrative leave and not renewing her contract and Hammons did not prove that the proffered reason was pretextual. On this record, the district court did not err because Hammons failed to produce sufficient evidence to allow a reasonable finder of fact to conclude that the employer's articulated reasons were not believable. See Jackson v. State of Ala. State Tenure Comm., 405 F.3d 1276, 1289 (11th Cir. 2005) (quotations and citations omitted).

10

Holifield, 115 F.3d at 1566. We assume, without deciding, that Hammons's December 17, 2002 letter to the Chancellor was a statutorily protected activity for purposes of the first element of a prima facie case and the second element is not disputed.

"To establish a causal connection, a plaintiff must show that 'the decision-makers were aware of the protected conduct' and 'that the protected activity and the adverse employment action were not wholly unrelated.'" Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (internal citations omitted). "[A]t a minimum, [a plaintiff] must show that the adverse act followed the protected conduct." Griffin v. GTE Fla., Inc., 182 F.3d 1279, 1284 (11th Cir. 1999). In other words, the plaintiff must show a temporal link between a protected activity and an adverse employment action. See Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1060-61 (11th Cir. 1999) (holding that no causal link existed between protected activity in February 1994 and adverse employment actions in late 1994 and early 1995); Griffin, 182 F.3d at 1281-82 (finding no causal link when the plaintiff returned to work for 11 days before leaving again, and no problems occurred during those 11 days); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 951 (11th Cir. 2000) (holding that a 7-month time period between the protected activity and the adverse employment action is too indirect to satisfy the

11

causal connection requirement); <u>Breach v. Ala. Power Co.</u>, 962 F. Supp. 1447, 1461 (S.D. Ala. 1997), <u>aff'd</u> 140 F.3d 1043 (11th Cir. 1998) (holding that more than a year between the protected activity and the discharge is not close enough to support the causal connection requirement).

Hammons wrote the letter of grievance to the Chancellor on December 17, 2002. At that time, Mitchell had filed written memoranda reprimanding Hammons for her poor performance as early as August 2002. Moreover, <u>five</u> months passed between the time Hammons submitted the letter and the adverse employment action on May 31, 2003. The Supreme Court has recognized, assuming that temporal proximity suffices to show causation, such events must come closer to each other in time than that to be causally linked. <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (citing with approval circuit court cases invalidating temporal proximities of three and four months).[3] In short, Hammons has not shown that adverse employment action was causally related to her letter to the Chancellor, and, therefore, she has failed to establish a <u>prima facie</u> case of retaliation.[4]

---

[3] We are unpersuaded by Hammons's additional argument that Mitchell's "onslaught" was prompted by her August 2002 letter of reprimand to Griffin, a subordinate, black employee, because that position is inconsistent with her argument in the district court that she was terminated in retaliation for the December 2002 grievance letter to the Chancellor.

[4] Even if Hammons established a <u>prima facie</u> case of retaliation, the district court found that she failed to show that Wallace State's proffered nondiscriminatory, legitimate reasons for its

For the foregoing reasons, we affirm the entry of summary judgment in favor of Defendants.

**AFFIRMED.**

---

decision to place her on administrative leave and not to renew her employment contract were pretextual. For example, there was extensive evidence that Hammons performed poorly as Dean of Students at Wallace State, as early as August 2002. Hammons was criticized for problems in completing her <u>direct</u> responsibilities, including her coordination of registration and circumvention of school policy for electronic funds transfers. Hammons also was criticized in her <u>supervisory</u> capacity, including her oversight of the Financial Aid Office and her interaction with others. Simply put, Hammons has not met her burden under <u>McDonnell Douglas</u> to point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. <u>Jackson v. State of Alabama State Tenure Comm.</u>, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotations and citations omitted). Accordingly, Defendants were entitled to summary judgment on this additional basis.