[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-12261
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 11, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00114-CV-1

DENISE ROLAND,

Plaintiff-Appellant,

versus

UNITED STATES POSTAL SERVICE,
et al.,

Defendants,

JOHN E. POTTER, Postmaster
General of the United States,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(October 11, 2006)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Denise Roland, an African-American woman proceeding <u>pro se</u>, appeals the district court's entry of summary judgment in favor of her former employer, John E. Potter, the Postmaster General of the United States ("Postmaster General"), in her employment discrimination lawsuit, alleging disparate treatment based on race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, <u>et</u> <u>seq.</u> On appeal, Roland argues the district court erred by entering summary judgment on her disparate-treatment claim, after finding (1) that she had not established a <u>prima</u> <u>facie</u> case of discrimination because she was unable to identify a similarly situated employee who had been treated more favorably, and (2) that she had not shown the Postmaster General's proffered reasons for her demotion were pretextual. We affirm.

I.

We review a district court's grant of summary judgment <u>de novo</u>, viewing the evidence in favor of the non-moving party. <u>Fisher v. State Mut. Ins. Co.</u>, 290 F.3d 1256, 1259-60 (11th Cir. 2002). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To warrant the entry of summary judgment, the moving party must

2

demonstrate that "there is no genuine issue as to any material fact." HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 991 (11th Cir. 2001). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

## II.

The parties are familiar with the relevant facts and we only summarize them here. Roland began working for the U.S. Postal Service in 1978. In 1984, she was promoted to the position of Supervisor, and in 1985, she became an Officer in Charge at the Grovetown, Georgia post office. In 1986, Roland again was promoted, this time to the position of Postmaster of Louisville, Georgia, a "level 18" post office. Then, in 1990, she became the Postmaster of Hephzibah, Georgia, a "level 20" post office. In May 1999, Roland was demoted to the position of Part-Time Flexible Clerk in the Northern Augusta post office.

Roland filed the instant action against the Postmaster General and her former U.S. Postal Service supervisor, Billy Pierce, a Manager of Post Office Operations for the Southern Georgia District, asserting that she was improperly demoted and discriminated against based on her race, in violation of Title VII.[1] She further

---

[1]Roland also raised, unsuccessfully, a claim of retaliation before the district court, but does not raise this as an issue on appeal. Accordingly, issues as to that claim are deemed waived.

alleged that because of her race, she was treated differently from two similarly situated Caucasian males in terms of the discipline she received for allegedly conducting her Mary Kay business during work hours.

The Postmaster General answered, denying liability and asserting several defenses. After discovery was completed, the Postmaster General moved for summary judgment, arguing that: (1) Roland could not satisfy her burden of showing a prima facie case of racial discrimination under Title VII because she failed to show that a similarly situated individual outside of her protected class was treated differently; (2) the U.S. Postal Service had a legitimate, non-discriminatory reason for terminating Roland -- that she conducted Mary Kay sales activities while at work; and (3) Roland could not demonstrate that the U.S. Postal Service's proffered legitimate reason for terminating her was pretextual. In support of the motion for summary judgment, the Postmaster General submitted a statement of material facts as to which there were no genuine issues to be tried and an appendix of supporting materials.

According to the summary judgment materials, Roland had been charged with "unacceptable conduct" relating to her Mary Kay business, and an unrelated

Flanigan's Enterprises, Inc. of Georgia v. Fulton County, Georgia, 242 F.3d 976, 987 (11th Cir. 2001). Likewise, Roland does not challenge the district court's order dismissing Pierce as a defendant.

4

charge pertaining to the use of improper time recording procedures. Her supervisor, Pierce, alleged that he received complaints from subordinate employees in Roland's office. According to these complaints, Roland "had solicited and sold Mary Kay products on postal premises to postal employees and postal customers." Pierce investigated the complaints and concluded that the allegations were accurate and that Roland had used her position as a postmaster to further her Mary Kay business. Her activities included displaying Mary Kay flyers in the post office; verbally soliciting employees, including subordinates, to make purchases and become Mary Kay representatives; verbally soliciting postal customers to make purchases and "host sales parties"; handing out her Mary Kay business cards and displaying them at the post office; and conducting business transactions from her office.

Subsequently, Charles Matthews, the Manager of Human Resources for the Southern Georgia District, issued Roland a letter of decision in which he concluded that the charges against her were "fully supported by the record," but recommended that only a demotion was warranted, rather than a removal. Matthews acknowledged Roland's denial of the allegations against her, but ultimately found that they were nonetheless supported by a preponderance of the evidence. In his letter, Matthews noted that "[t]he sale and solicitation of sales

5

from subordinate employees and postal customers conflict[ed] with [Roland's] position as Postmaster in that [she] used [her] position for personal gain." Based on that finding, Matthews determined that Roland could not "be trusted in a position of supervision" nor could she have "contact with the public."

Roland appealed the agency's decision to demote her and had a three-day hearing before the Merit Systems Protection Board ("MSPB"), the transcript of which was attached to the materials in support of the Postmaster General's summary judgment motion. At the hearing, Roland testified that she began her Mary Kay business in May of 1999, and had sold products to employees, but denied soliciting subordinate employees or customers to buy her products, or to become representatives. However, Roland admitted that she informed employees about how to become Mary Kay representatives when they inquired, and acknowledged that she made a financial profit when individuals signed up through her. Roland said that while she had limited conversations with postal customers about Mary Kay, she did so only after they complimented her on her appearance. Roland admitted that she had used the post office photocopier on one occasion and made calls from her work telephone for Mary Kay-related purposes, but denied distributing business cards or conducting Mary Kay business transactions from her office. Roland testified that she thought the demotion was based on race and

6

gender discrimination because two white male postal employees had engaged in similar conduct and were not disciplined as severely: Wayne Grier used his postal vehicle to deliver his wife's Avon products; and Roland alleged that Billy Pierce had assaulted another employee.

At the MSPB hearing, the Postmaster General also presented the testimony of nine employees formerly under Roland's supervision, all of whom testified that Roland conducted her Mary Kay business at the post office during work hours, and the testimony of Tommy Caruthers, an African-American male and the Labor Relations Manager for the U.S. Postal Service. Caruthers said that he had cautioned Roland about selling Mary Kay products at work on more than one occasion. The MSPB also considered the testimony of the Human Resources Manager, Matthews, and Roland's former supervisor, Billy Pierce.

The MSPB affirmed the agency's demotion of Roland based on her Mary Kay activities at work, finding, inter alia, that Roland's denial of the relevant allegations to be "incredible." The MSPB also determined that Roland's claim of disparate treatment failed because she had not identified a similarly situated employee who was treated differently.

The district court granted the Postmaster General's motion for summary judgment. First, the district court determined that Roland failed to establish a

prima facie case of disparate treatment because she did not show that another similarly situated employee was treated differently. More specifically, the district court concluded that Grier "was not within the same or similar supervisory regime. . . and did not have the same appeal rights" as Roland, and thus, was not a proper individual for comparison. Also, Roland was a supervisor, and Grier was not, making her conduct "more egregious," supporting the conclusion that they were not similarly situated for purposes of Title VII analysis.

Second, the district court found that even if Roland had demonstrated a prima facie case of racial discrimination, she failed to effectively rebut the Postmaster's legitimate, non-discriminatory reasons, and thus, had failed to show pretext. In fact, Roland "offered no evidence or argument to suggest that [Potter's] proffered reasons [were] pretext." Even if Caruthers (the Labor Relations Manager for the U.S.P.S.) had made a statement regarding "white boys," the district court found, Roland presented no evidence to "connect or attribute" the statement "to the actions or intent of Pierce or Matthews," who were the decisionmakers as to Roland's discipline, and thus the comment could not support a finding that they disciplined Roland based on race. This appeal followed.

8

III.

Title VII makes it unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.  See 42 U.S.C. § 2000e-2(a).  Because Roland relies on circumstantial evidence to establish her disparate-treatment claim, we test the sufficiency of that claim by applying the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).  See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

Under the McDonnell Douglas framework, a plaintiff first must show an inference of discriminatory intent, and thus carries the initial burden of establishing a prima facie case of discrimination.  See McDonnell Douglas, 411 U.S. at 802.  In a disparate-treatment case like this one, to satisfy her prima facie burden, a plaintiff must show: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside her protected class.  See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel. Univ. of

S. Fla., 342 F.3d 1281, 1289 (11th Cir.2003); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam).

The plaintiff's successful assertion of a prima facie case "creates a rebuttable presumption that the employer unlawfully discriminated against her." E.E.O.C. v. Joe's Stone Crab, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002) (citing U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)). If the plaintiff successfully demonstrates a prima facie case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason. See Joe's Stone Crab, 296 F.3d at 1272. "Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." Id. at 1272-73 (quoting Burdine, 450 U.S. at 255-56). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." Id. at 1273.

The district court found that Roland did not satisfy her initial burden to establish a prima facie case of discrimination. Again, to do so, she was required to show: (1) she was a member of a protected class; (2) she was qualified for the

10

position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside her protected class. See Maynard, 342 F.3d at 1289. The instant appeal concerns only the fourth element of the prima facie case since the parties do not dispute that Roland satisfied the other elements.

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). To show that employees are similarly situated, the plaintiff must establish that the employees are "similarly situated in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). The comparator must be "nearly identical" to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer. Id.

On this record, Roland has failed to establish the fourth prong of her prima facie case. In her brief, Roland again points to Wayne Grier as a suitable comparator. According to Roland, Grier used his official vehicle to deliver his wife's Avon products and was not disciplined in a comparable way to her. However, even if Grier engaged in the activities alleged and was not disciplined in

the same way, he is not a proper comparator because he worked in a different facility, reported to a different supervisor, and was not entitled to the same appeals rights as Roland was, by virtue of her "veteran" status. Indeed, as Matthews put it, and Roland presented no evidence to the contrary in her responsive materials in opposition to summary judgment, "[Grier's] status within the organization put him on a separate level" as he had been disciplined by "a Manager in another functional unit." Moreover, the comparison to Grier fails for another reason. The district court found that Roland's conduct was more egregious that Grier's because Roland engaged in Mary Kay sales and marketing in the postal facility and while in a position of authority. Grier, on the other hand, delivered his wife's Avon products outside of the postal facility and did not involve subordinates in his Avon activities. Finally, it was undisputed that neither Pierce nor Matthews, who were the ones to make the disciplinary decisions as to Roland, had anything to do with the supervision or discipline of Grier. Cf. Silvera v. Orange County Sch. Bd., 244 F.3d at 1253, 1261 n. 5 (11th Cir. 2001) ("[D]ifferences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of employment discrimination").

Simply put, Grier was not "similarly situated in all relevant respects" or "nearly identical" to Roland for purposes of Title VII. See Wilson, 376 F.3d at

12

1091. Accordingly, the district court did not err by granting summary judgment in favor of the Postmaster. [2]

**AFFIRMED.**

---

[2]Because summary judgment was proper based on Roland's failure to establish a prima facie case, we need not, and do not, reach her argument concerning pretext, the third step of the McDonnell Douglas analysis.