[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 29, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14188
Non-Argument Calendar

_____

D. C. Docket No. 06-20766-CV-PAS

LISA BURKE THOMPSON,

Plaintiff-Appellant,

versus

BAPTIST HOSPITAL OF MIAMI, INC.,
BAPTIST HEALTH SOUTH FLORIDA, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 29, 2008)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Lisa Burke Thompson appeals the district court's grant of summary judgment in favor of her former employer Baptist Hospital of Miami and Baptist Health South Florida (hereinafter Baptist Hospital) in her employment discrimination suit brought pursuant to 42 U.S.C. § 2000e-(2)(a)(1) ("Title VII") and the Florida Civil Rights Act, Florida Statute § 760.10 ("FCRA"). After review, we affirm.

## I. BACKGROUND

Thompson, who is African American, was employed by Baptist Hospital in the Children's Center, which provides child care for hospital employees. By January 26, 2005, Thompson had exhausted the twelve weeks of leave available to her under the Family and Medical Leave Act ("FMLA"). On that date, Thompson began a medical leave of absence under Baptist Hospital's non-FMLA leave policy.

### A. Non-FMLA Leave Policy

Baptist Hospital provided copies of the non-FMLA leave policy to its employees, including Thompson. In addition, just a week before she began her non-FMLA leave of absence, Thompson attended a training session on Baptist Hospital's FMLA and non-FMLA leave policies.

Baptist Hospital's non-FMLA leave policy provided as follows: (1) an

2

employee on leave seeking to return to work had to complete a "Notice of Intention to Return from Leave of Absence" before returning to active status; (2) if the employee was on leave for more than two weeks, notification had to be given five days prior to the employee's planned return; and (3) if the employee was absent due to his or her own health problem, the employee needed to bring a return-to-work release statement from his or her health care provider to obtain a signed release to return to work from Baptist Hospital's Employee Health Service. The policy also provided as follows: (1) if the leave was for thirty days or less, the employee will be returned to the employee's former position; and (2) if the leave lasted between 31 and 90 days, the hospital will make an effort to return the employee to the former position or in the same department and classification in which the employee had worked prior to the leave of absence. If such a position was not available, the employee could be granted a thirty-day extension of leave in order to locate another position in the system, but if the employee did not obtain another position, the employee would be terminated.

After her non-FMLA leave began, Thompson needed to return to work within thirty days (i.e., by February 25, 2005) in order to guarantee her former position at the Children's Center. Instead, Thompson did not report to Baptists Hospital's Employee Health Service with her doctor's return-to-work release

3

statement until March 7, 2005. Thompson's doctor cleared her to return to work on March 7, 2005, but restricted her to light work with lifting of no more than twenty pounds. Thompson's former child care position required lifting between ten and fifty pounds because employees in that position must be able to lift the children in their care. Thompson also requested a part-time morning schedule.

When Thompson attempted to return to her child care position, her supervisor, Daisy Acosta, informed her that she could not be accommodated. Furthermore, when Thompson did not return to work within the thirty-day period required under the non-FMLA leave policy to guarantee reinstatement, Acosta posted the position to be filled. Thompson applied for the posted position. However, Letty Lederman, a two-year volunteer at the hospital who is white, was hired.

## B.    District Court Proceedings

Thompson filed this action in district court alleging that she was terminated based on her race.[1] Following discovery, Baptist Hospital moved for summary judgment. The district court granted summary judgment, concluding that Thompson had failed to present evidence that a similarly situated employee outside

---

[1]Thompson does not bring a hiring claim based on race, only that she was terminated because of her race.

4

her protected class was treated more favorably, an element of her prima facie case.[2]

Alternatively, the district court concluded that Thompson failed to present evidence that Baptist Hospital's legitimate, nondiscriminatory reason for terminating her was pretext for discrimination.

Thompson filed this appeal.[3]

## II. DISCUSSION

Where, as here, a plaintiff relies on circumstantial evidence of discrimination, we evaluate whether summary judgment is appropriate using the now familiar McDonnell Douglas framework.[4]  Combs v. Plantation Patterns, 106 F.3d 1519, 1527 (11th Cir. 1997).  Under McDonnell Douglas, the plaintiff must first establish a prima facie case.  E.E.O.C. v. Joe's Stone Crabs, 296 F.3d 1265, 1272 (11th Cir. 2002).  If the plaintiff makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions and then to the plaintiff to present evidence that the employer's reason is

---

[2]Thompson's action also initially claimed that she was subjected to a racially hostile work environment and denied promotions based on her race.  The district court granted summary judgment on these claims, concluding that they were time barred because Thompson had not timely filed her charge with the Equal Employment Opportunity Commission.  On appeal, Thompson does not contest the district court's conclusion that her other claims were time-barred and we do not address her time-barred claims further.

[3]We review a grant of summary judgment de novo, applying the same legal standards as the district court and viewing all evidence and drawing all reasonable inferences in favor of the non-moving party.  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005).

[4]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).

pretext for discrimination.  Id. at 1272-73.

## A.    Prima Facie Case

To establish a prima facie case of discriminatory discharge, the plaintiff must show that: (1) she is a member of a protected class; (2) she was discharged; (3) she was qualified for the position from which she was discharged; and (4) her employer treated a similarly situated employee outside her protected class more favorably or filled her former position with someone outside her protected class. Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003).  Here, the only contested element of the prima facie case is the fourth element.

Thompson points to Christina Noboa, an Hispanic worker in the Children's Center, as a similarly situated employee.  Noboa had injured her foot and was instructed by her doctor to stay off of it.  Noboa sought an accommodation from Baptist Hospital, which temporarily assigned her to work at the front desk assisting the main secretary in her duties.

We agree with the district court that Noboa is not "similarly situated" to Thompson.  Thompson was on FMLA leave for twelve weeks and then on non-FMLA leave for over thirty days.  Thompson was terminated after she did not return to work within that thirty days.  The non-FMLA leave policy expressly provides that an employee is not guaranteed a return to their former position if the

non-FMLA leave is over thirty days. More importantly, there is no evidence that Noboa was placed in the temporary secretarial position after being on non-FMLA leave for more than thirty days. Indeed, there is no evidence that Noboa was even on non-FMLA leave prior to being placed in the secretarial position. Under the circumstances, Noboa is not a similarly situated employee.

Nonetheless, Thompson did establish the fourth element by showing that her position was ultimately filled by an applicant who is not African American. Thus, Thompson met her prima facie case. See Maynard, 342 F.3d at 1289 (stating that a discriminatory discharge plaintiff may satisfy the fourth prong of the prima facie case by showing either that she was treated less favorably than a similarly situated person outside her protected class or that her former position was filled by someone outside her protected class).

**B.     Legitimate Non-discriminatory Reason and Pretext**

If the plaintiff presents evidence of a prima facie case, a rebuttable presumption arises that the employer unlawfully discriminated against her and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason. Joe's Stone Crabs, Inc., 296 F.3d at 1272. If the employer meets this burden of production, thereby rebutting the presumption of discrimination, the plaintiff must show that the proffered reason is in fact pretext for discrimination. Id. at 1272-73.

7

Thompson does not dispute that Baptist Hospital articulated legitimate nondiscriminatory reasons for discharging her. Specifically, Baptist Hospital presented evidence that it discharged Thompson because Thompson did not return to work within the thirty days required by its non-FMLA leave policy to guarantee her former job and that, when she did return to work, it could not accommodate her work restrictions of light duty work with lifting of no more than twenty pounds or her request for a part-time morning schedule.

To establish pretext, the plaintiff must present evidence that "the proffered reason was not the true reason for the employment decision . . . either . . . by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation [was] unworthy of credence." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981)). The plaintiff's pretext evidence "must reveal 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005).

Here, Thompson presented no evidence that she in fact complied with the

non-FMLA leave policy. Although Thompson claims she was able and willing to return to work within the thirty-day period, she did not bring her doctor's return-to-work statement to Employee Health Services or give her supervisor five-days notice of an intent to return within the thirty-day period. In fact, Thompson's doctor did not clear her to return to work until March 7, 2005, after the thirty-day period (and her right to guaranteed reinstatement) had expired.

In addition, Thompson presented no evidence that Baptist Hospital could have reinstated her to her child care position despite her lifting restriction. In fact, Thompson does not dispute that employees at the Children's Center needed to be able to lift more than twenty pounds in order to care for the children. Furthermore, Baptist Hospital presented evidence that it had discharged a non-African American employee at the Children's Center, Janet Crespo, who remained on extended medical leave and then sought to return to work with a lifting restriction. Like Thompson, Crespo was told that Baptist Hospital could not accommodate her lifting restriction and her child care position was posted. It is also undisputed that a part-time morning position was not available when Thompson sought to return to work.

Thompson points to the fact that her supervisor, Acosta, inquired with the human resources department about posting Thompson's position once the thirty-

day period had run. Thompson contends that this conduct was inconsistent with the non-FMLA leave policy's commitment to make efforts to reinstate an employee to his or her position if he or she returns to work between 31 and 90 days. However, Acosta explained that she made the inquiry to human resources about posting the position after the thirty days expired because she had been experiencing difficulties pulling employees from one classroom to another and needed to fill the position to maintain the Children's Center child-to-staff ratios. Thompson has presented no evidence that this explanation is false, and, in fact, there is ample evidence that employees at the Children's Center were being pulled from one classroom to another to maintain child-to-staff ratios and that this practice caused problems.

We recognize that Thompson also claims that her supervisor, Acosta, sometimes showed favoritism to employees that were in her circle of friends. However, there was no evidence Acosta showed favoritism in applying the non-FMLA leave policy or that Acosta's favoritism worked to the detriment of only Thompson's protected class. See Howard v. BP Oil Co., Inc., 32 F.3d 520, 526-27 (11th Cir. 1994) (explaining that nepotism that is not limited to the plaintiff's protected class is not actionable as disparate treatment discrimination under Title VII); Platner v. Cash & Thomas Contractors, Inc., 908 F.2d 902, 905 (11th Cir.

1990) (same).

Thompson also relies on the evidence that Christina Noboa was given secretarial work after she injured her foot. For the same reasons this evidence does not support Thompson's prima facie case, it also does not support an inference of pretext. See Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (concluding that plaintiff's comparator evidence did not support a showing of pretext because the comparator was not "similarly situated").

Thompson failed to present evidence that Baptist Hospital's reasons for discharging her were false or that Baptist Hospital's actions were motivated by Thompson's race. Accordingly, the district court properly granted summary judgment to Baptist Hospital on Thompson's discriminatory termination claims.[5]

**AFFIRMED.**

---

[5]The FCRA, which is patterned after Title VII, are analyzed using the same framework as Title VII claims and Title VII precedent. Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998). Thus, Thompson's FCRA claim fails for the same reasons as her Title VII claim.