[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 12, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-12917

_____

D. C. Docket No. 93-01082 CV-DTKH

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellee,

versus

JOE'S STONE CRABS, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 12, 2002)**

Before TJOFLAT, COX and BRIGHT[*], Circuit Judges.

PER CURIAM:

_____

[*]Honorable Myron H. Bright, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

Joe's Stone Crab, Inc. ("Joe's") appeals the district court's entry of judgment in favor of the Equal Employment Opportunity Commission ("EEOC") on the EEOC's claims, under Title VII, that Joe's intentionally discriminated against four female applicants — Carol Coyle, Raquel Munoz, Catherine Stratford, and Teresa Romanello. Although none of these women actually applied for a position during the actionable time period, the district court found that Joe's was liable because its discriminatory hiring practices during that time period deterred the women from applying. Because this finding is not supported with respect to Coyle and Munoz, we reverse the district court's judgment as to those applicants. By contrast, the record does support the district court's finding as to Stratford and Romanello. We affirm the district court's judgment as to Stratford; as to Romanello, we vacate and remand for the district court to recalculate damages.

## I.  Background

The facts and procedural history of this case, which is making its second appearance before this court, are described thoroughly in the opinion of the previous panel. *See EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263 (11th Cir. 2000). Accordingly, we note only that background relevant to our decision in this appeal. This case began on June 25, 1991, when an EEOC Commissioner filed a discrimination charge against Joe's pursuant to sections 706 and 707 of Title VII of

2

the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 & § 2000e-6.  The charge alleged that Joe's discriminated against women generally with respect to recruitment, hiring, and job assignments, but it did not allege discrimination against any specific individual.  (R.5-137, Ex. A.)  After investigating the allegations made in the charge, the EEOC issued a decision finding that Joe's had engaged in a pattern and practice of intentional discrimination against women by failing to recruit and hire them as wait staff.  (R.5-137, Ex. B at 6.)  As required by Title VII, *see* 42 U.S.C. § 2000e-5(b), Joe's and the EEOC attempted to conciliate the findings made in the Decision, but their efforts proved unsuccessful.

Thereafter, on June 8, 1993, the EEOC filed a complaint in federal court pursuant to § 706, 42 U.S.C. § 2000e-5(f), alleging that Joe's violated Title VII through both intentional disparate treatment discrimination and unintentional disparate impact discrimination.  The complaint, however, did not allege that Joe's engaged in a pattern and practice of discrimination, the type of discrimination specifically referenced in the EEOC's Decision.  The EEOC subsequently filed an amended complaint in response to Joe's motion for a more definite statement.  Like the original complaint, the amended complaint alleged disparate treatment discrimination and disparate impact discrimination, but it did not allege pattern and practice

3

discrimination.[1]  Unlike the original complaint, however, the amended complaint identified eighteen individuals allegedly aggrieved by the employment practices at Joe's.  (R.1-38, Ex. A.)  Among the individuals identified were Raquel Munoz, Catherine Stratford, and Carol Coyle, three of the claimants whose claims are at issue in this appeal.  (*Id.*)  The fourth claimant, Theresa Romanello, was identified later in the proceedings.

The district court held a bench trial on liability, after which it entered a partial judgment in favor of the EEOC, making factual findings and conclusions of law with respect to Joe's hiring practices.  *See EEOC v. Joe's Stone Crab, Inc.*, 969 F. Supp. 727 (S.D. Fla. 1997).  Since the late 1970s, the owners of Joe's have delegated authority to hire new food servers to subordinate staff.  *See id.* at 731.  Food servers generally are hired at a "roll call," held every year on the second Tuesday in October.  Although Joe's rarely advertises, the district court found that the roll call was "widely known throughout the local food server community."  *Id.* at 733.  In addition, there existed a "widely-held belief among workers in the Miami food serving industry" that Joe's did not hire women to fill food server positions.  *Id.*  Between 1986 and 1990, Joe's hired 108 new food servers, all of whom were male.  *Id.*  The district court

---

[1]In fact, the EEOC expressly stated before both the district court and this court that this was not a pattern and practice case.

rejected the EEOC's disparate treatment claims on the ground that the EEOC had not proven intentional discrimination. *See id.* at 735. The district court found, however, that Joe's nonetheless was liable for disparate impact discrimination because its delegation of hiring authority to subordinate staff resulted in a statistical disparity between the available female labor pool and the number of females actually hired by Joe's. *See id.* at 736-40. With liability determined, the district court then held another bench trial, this time on remedies, and entered judgments awarding back pay and prejudgment interest to Stratford, Munoz, Coyle, and Romanello. The district court also ordered extensive injunctive relief with respect to Joe's hiring practices.[2]

Joe's appealed the district court's entry of judgment on the disparate impact claims, as well as the imposition of monetary and injunctive relief. The EEOC also filed a notice of appeal; however, this court subsequently dismissed that cross-appeal pursuant to the EEOC's own motion. Instead of pursuing the cross-appeal, the EEOC argued that, if the judgment could not be affirmed for the reasons articulated by the district court (i.e., unintentional disparate impact), it nonetheless could be affirmed on the alternative basis that Joe's had discriminated against the claimants intentionally

---

[2]The district court primarily required that Joe's follow certain court-ordered hiring procedures and allow a court-appointed monitor at its roll calls through January 1, 2001. The requirements set out by the district court have been completed, and this injunctive relief is not at issue in this appeal.

(i.e., intentional disparate treatment). This court rejected the district court's finding of disparate impact and vacated its judgment of liability as to the EEOC's disparate impact claims. *See Joe's*, 220 F.3d at 1283. But, concluding that the district court's factual findings might support a finding of intentional discrimination, the court remanded the case to the district court to "make such factual findings and draw such conclusions of law about the EEOC's intentional discrimination claims as it may deem appropriate." *Id.* at 1287.

On remand, without holding a hearing or receiving supplemental briefing or argument from the parties, the district court determined that the EEOC proved its claim of intentional disparate treatment discrimination. *See EEOC v. Joe's Stone Crab, Inc.*, 136 F. Supp. 2d 1311, 1313 (S.D. Fla. 2001). Reiterating certain of its previous factual findings, and reaffirming all others, *see id.* at 1312-13, the district court then entered an amended final judgment, again awarding back pay and prejudgment interest to Stratford, Munoz, Coyle, and Romanello. Joe's appeals.

## II. Standard of Review

In considering the district court's judgment, we review its factual findings for clear error and its legal conclusions de novo. *See, e.g., Joe's*, 220 F.3d at 1273; *Wilson v. Minor*, 220 F.3d 1297, 1301 (11th Cir. 2000). We review the district court's

6

award of back pay for abuse of discretion. *See EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1511 (11th Cir. 1987).

## III. Discussion

Joe's asserts two primary challenges to the district court's judgment. First, Joe's contends that the district court erred in finding it liable for disparate treatment discrimination because the evidence is insufficient to support that finding with respect to any of the four claimants at issue. Second, Joe's contends that, even assuming that the EEOC established disparate treatment liability as to the four claimants, the district court erred in its determination of damages and prejudgment interest.[3]

### A. *Liability*

### 1. Actionable Period

At the outset, we must establish the appropriate temporal reach of the EEOC's disparate treatment claims. Section 706 of Title VII, the statute under which the

---

[3]In addition to its arguments about liability and damages, Joe's argues that the district court erred in entering judgment for the EEOC because the discrimination charge, as it relates to the disparate treatment claims, was untimely under 42 U.S.C. § 2000e-5(e)(1). We think, however, that Joe's argument in this regard is not concerned with procedure — i.e., whether the charge was filed timely — so much as it is concerned with the substance of the EEOC's proof — i.e., whether the EEOC proved an act of intentional discrimination against each of the four claimants within the actionable period established by § 2000e-5(e)(1). For this reason, we think that Joe's timeliness argument is subsumed within our discussion of the merits.

EEOC brought this action, requires that a plaintiff, including the EEOC itself, exhaust certain administrative remedies before filing a suit for employment discrimination. *See generally* 42 U.S.C. § 2000e-5; *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). The administrative process is initiated by timely filing a charge of discrimination. *See* 42 U.S.C. § 2000e-5(b); *Wilkerson*, 270 F.3d at 1317. For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1). Accordingly, only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable. *See Nat'l R.R. Passenger Corp. v. Morgan*, ___S. Ct. ___ , No. 00-1614 (June 10, 2002); *Taylor v. Hudson Pulp & Paper Co.*, 788 F.2d 1455, 1458 (11th Cir. 1986). Because the EEOC filed its charge on June 25, 1991, discriminatory acts occurring prior to August 29, 1990 are outside the scope of this action.

The EEOC, however, argues that the discrimination in this case constituted a continuing violation, which extended the limitations period beyond August 29, 1990. In determining whether a discriminatory employment practice constitutes a continuing violation, "we must distinguish between the present consequence of a one-time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does." *See Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992) (internal quotations omitted). The disparate

8

treatment claims asserted by the EEOC fall into the former category. The alleged acts at issue — the failure to hire the claimants because they were women — were discrete, one-time employment events that should have put the claimants on notice that a cause of action had accrued. *See Morgan*, ___ S. Ct. at ___; *see also Clark v. Olinkraft, Inc.*, 556 F.2d 1219, 1222 (5th Cir. 1977) (suggesting that failure to hire does not constitute continuing violation);[4] *East v. Romine, Inc.*, 518 F.2d 332, 336-37 (5th Cir.), *overruled on other grounds*, *Burdine v. Texas Dep't of Community Affairs*, 647 F.2d 513 (5th Cir. 1975), (holding that district court should not have considered plaintiff's failure to hire claims arising prior to limitations period). Accordingly, the continuing violation doctrine does not extend the actionable time period beyond August 29, 1990, and the EEOC had to show acts of intentional discrimination injuring each of the four claimants that occurred between that date and the filing of the charge on June 25, 1991.[5]

---

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the Former Fifth Circuit handed down prior to October 1, 1981.

[5]Although all of the claimants applied and were rejected for food server positions at Joe's after June 25, 1991, the EEOC does not explicitly argue on appeal that the ending date of the actionable period should be extended to encompass these post-charge events. Because this issue has not been presented squarely, we need not address it. We note, however, that Title VII requires a charge to be filed "after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1), and that "'[o]ccurred' means that the practice took place or

9

happened in the past." *Morgan*, ___ S. Ct. at ___; *see also id.* at ___ ("Each discrete act starts a new clock for filing charges alleging that act.").

## 2. The Legal Framework

As explained above, this appeal involves only claims of disparate treatment discrimination, i.e., that Joe's intentionally discriminated against Stratford, Munoz, Coyle, and Romanello by failing to hire them on account of their gender. *See Joe's*, 220 F.3d at 1273 (explaining that disparate treatment claims require proof of discriminatory intent). Whether an employer intentionally discriminated against an employee or potential employee is a question of fact, which may be proved either through direct or circumstantial evidence. *See Green v. Sch. Bd. of Hillsborough County*, 25 F.3d 974, 977-78 (11th Cir. 1994). "Direct evidence of discrimination is evidence, that, 'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (quoting *Burrell v. Bd. of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997)) (alterations in original).

Absent such evidence, a plaintiff may prove its case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), and subsequent cases. Under this framework, the plaintiff initially must establish a prima facie case of discrimination. *See id.* at 802, 93 S. Ct. at 1824. By establishing a prima facie case, the plaintiff creates a rebuttable presumption that the employer unlawfully

11

discriminated against her. *See United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S. Ct. 1478, 1481 (1983). The burden then shifts to the employer to rebut this presumption by producing evidence that its action was taken for some legitimate, non-discriminatory reason. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 1094 (1981). Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity," in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination. *See id.* at 255-56, 101 S. Ct. at 1095-96. Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff. *See id.* at 253, 101 S. Ct. at 1093; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000).

### 3. Analysis

#### a. Prima Facie Case and Futile Gesture Doctrine

Having reviewed the record, we find no direct evidence of intentional discrimination toward any of the four claimants between August 29, 1990 and June 25, 1991. Thus, the EEOC's case must be premised on circumstantial evidence and the *McDonnell Douglas* framework. In a traditional failure-to-hire case, the plaintiff

establishes a prima facie case by demonstrating that: (1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class. *See Schoenfeld*, 168 F.3d at 1267. Joe's contends that the EEOC failed to establish a prima facie case of discrimination because none of the claimants applied for a job at Joe's during the actionable period. The EEOC, on the other hand, maintains that the issue in this appeal is not whether it established a prima facie case, but whether the district court, having considered all of the evidence as the trier of fact, clearly erred in its ultimate finding that Joe's intentionally discriminated against the claimants. Thus, before addressing the district court's finding of liability, we must determine the exact question before us.

The EEOC correctly points out that, when a defendant fails to persuade the district court to dismiss the action for lack of a prima facie case and responds to the plaintiff's proof by offering evidence of a non-discriminatory reason for its actions, the presumption of discrimination established under the *McDonnell Douglas* framework "drops from the case." *See Aikens*, 460 U.S. at 715, 103 S. Ct. at 1481. Put differently, "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff

really did so is no longer relevant." *Id.*, 103 S. Ct. at 1482. In this case, however, Joe's did not satisfy its burden of producing evidence of legitimate, non-discriminatory reasons with regard to the actionable period defined above. Joe's offered no evidence whatsoever to explain why it failed to hire any of the four claimants during the period between August 29, 1990 and June 25, 1991.[6] Rather, throughout these proceedings, Joe's has asserted that the claimants' failure to apply during the 300 days preceding the charge is fatal to the EEOC's claims. The question before us, then, is whether the district court, as the trier of fact, clearly erred in finding that the EEOC's prima facie case as to each claimant is supported by a preponderance of the evidence. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-10 & n.3, 113 S. Ct. 2742, 2748 n.3 (1993).[7]

---

[6]Joe's did produce evidence in an attempt to show that, in the years the claimants actually applied, they were not as qualified as the individuals hired. Because none of the claimants actually applied until after the EEOC filed its charge of discrimination, however, this evidence is not relevant to the alleged acts of discrimination occurring within the actionable period.

[7]In any event, even had Joe's met its burden of production, we could still consider evidence concerning the EEOC's prima facie case in considering the ultimate question of intentional discrimination. *See Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106 (explaining that trier of fact may consider evidence establishing prima facie case when determining issue of pretext); *Alexander v. Fulton County*, 207 F.3d 1303, 1335 (11th Cir. 2000) (same); *Green*, 25 F.3d at 978-80 (considering whether plaintiff established prima facie case in analyzing whether district court's finding of intentional discrimination was supported by substantial evidence).

It is undisputed that none of the four claimants applied for a food server position at Joe's during the time period between August 29, 1990 and June 25, 1991. Specifically, none of the claimants applied at Joe's October 1990 roll call, the only time during the actionable period in which Joe's hired food servers. Contrary to the argument advanced by Joe's, however, this is not the end of the matter. Our precedent demonstrates that a non-applicant may nonetheless establish a prima facie case by showing that she refrained from applying due to a justifiable belief that the employer's discriminatory practices made application a futile gesture. *See Taylor*, 788 F.2d at 1462; *Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir. 1972). To have a "justifiable belief" for purposes of this exception to the application requirement, a person must demonstrate: (1) that she had a real and present interest in the job for which the employer was seeking applications; and (2) that she would have applied for the job but effectively was deterred from doing so by the employer's discriminatory practices. *See Hailes*, 464 F.2d at 1008. In this case, the EEOC had to show that these criteria were satisfied as to each of the four claimants at issue.

### b. Real and Present Interest

We conclude that the EEOC did not meet its burden of showing that Coyle and Munoz possessed real and present interests in food server positions at Joe's during the

actionable period. Coyle, for example, did not apply to Joe's until sometime in the fall of 1991, and there is no indication that she ever contemplated applying at any earlier date. In fact, the district court awarded damages to Coyle based solely on her 1991 application, without any finding that she would have applied earlier. (R.11-324 at 12-13.) Munoz likewise did not apply until the fall of 1991, but the district court found that Munoz intended to apply "long before the October 1989 roll call." (R.11-324 at 10.) Whatever Munoz's intention prior to 1989, however, we have found no evidence that Munoz had a real and present interest in applying at Joe's at the October 1990 roll call. The only specific dates mentioned by Munoz were 1983, when she first wanted to apply but refrained because she thought she was too young, and 1991, when she actually applied. (R.18 at 583-84.) Although Munoz testified that she refrained from applying prior to 1991 because she heard that Joe's did not hire women (R.18 at 584), this testimony does not reveal what specific dates between 1983 and 1991 she contemplated applying. Because the EEOC failed to demonstrate that Coyle and Munoz had real and present interests in applying at the 1990 roll call, its prima facie case as to these claimants was not supported by a preponderance of the evidence, and the district court clearly erred in finding otherwise.

By contrast, the record sufficiently supports a finding that Stratford and Romanello both possessed a real and present interest in applying during the actionable

period. Although Stratford did not actually apply until October 1991, she testified that she moved from New Jersey to Miami Beach in 1990 with the intention of attending Joe's roll call that year. (R.17 at 323, 326-28.) Similarly, even though Romanello did not apply until October 1993, she testified that she first looked into working at Joe's several years earlier, making inquiries about the roll calls throughout the years from 1989 to 1993. (R.16 at 200; R.38 at 396.)

c. Effective Deterrence by Discriminatory Practices

Having established that Stratford and Romanello had real and present interests in applying at Joe's during the actionable period, the EEOC had to show that these claimants effectively were deterred from applying at the 1990 roll call by Joe's discriminatory hiring practices. Both Stratford and Romanello testified that they failed to apply during the actionable period because they were informed by acquaintances in the Miami Beach restaurant community that Joe's did not hire women. (R.17 at 325-27; R.38 at 396-97.) This testimony supports a finding that these claimants effectively were deterred by Joe's reputation for discriminatory hiring practices. The only question is whether the evidence supports a finding that this reputation was caused or perpetuated by Joe's. *See Joe's*, 220 F.3d at 1281 (explaining that employer may be held liable for discriminatory reputation only if it

17

caused or perpetuated such reputation through some intentional affirmative act). We think that it does.

The district court specifically found that, although Joe's did not have an express policy of excluding women from food server positions, it nonetheless had an implicit policy to that effect. *See Joe's*, 136 F. Supp. 2d at 1312-13. According to the district court's factual findings, the owners delegated complete authority over hiring decisions to subordinates who "deliberately and systematically excluded women from food server positions based on a sexual stereotype which simply associated 'fine-dining ambience' with all-male food service." *Id.* at 1313. Moreover, although not directly involved in the hiring process, the owners, "through their silence, consented to the deliberate and systematic exclusion of women from the serving staff." *Id.* Finally, the district court found that it was this implicit consent that caused the reputation that Joe's discriminated against women. *Id.*

These findings are supported adequately by the record. Roy Garrett, the night maitre d' at Joe's with authority to hire and supervise food servers, explained that male servers were the "accepted thing" at Joe's. (R.22 at 1483.) Garrett further testified: "It was always tradition from the time I arrived there that it was a male server type of job. And until just recently when we became aware that we had to do other things, . . . originally it was traditionally a male place." (R.22 at 1484-85.)

18

Garrett also testified that, in his opinion, Joe's predominantly male wait staff was part of the reason that few women applied for food server positions. (R.22 at 1485-86.) The day maitre d', Anthony Arenson, who also had hiring and supervisory authority over food servers, testified that gender was never mentioned at Joe's because "many fine dining establishments throughout the world have an all male staff. I think it was a perception that people didn't even think about." (R.25 at 2057.)

Arenson also testified about the specifics of the hiring process. According to Arenson, applicants were judged according to four factors: appearance, articulation, attitude, and application. (R.18 at 678; R.24 at 1969.) Arenson admitted, however, that the assessment of these factors was a subjective process, based on the individual interviewer's "gut-feeling." (R.19 at 699; R.25 at 2002-04.) Arenson also testified that Joe's had no female food servers in 1990, and no females were hired as food servers during any of the years from 1987 to 1990. (R.19 at 793, 814.) Robert Moorehead, the general manager at Joe's since 1986, similarly testified that he could not remember any women being hired as food servers from 1986 to 1990, and that this paucity of female food servers did not strike him as odd. (R.22 at 1467.) Nonetheless, Dennis Sutton, a lunch captain who was actively involved in the interview process in 1990, testified that women can perform the job of food server satisfactorily, and Garrett testified that Joe's "always had women that were qualified

19

women." (R.22 at 1413, 1428, 1485.) Based on this testimony, we cannot say that the above-referenced factual findings are clearly erroneous.

Accordingly, we conclude that the record adequately supports a finding that Stratford and Romanello would have applied in October 1990, but were deterred from doing so by discriminatory hiring practices at Joe's. The EEOC thus satisfied its prima facie case as to these two claimants. Because Joe's did not offer evidence of a legitimate, non-discriminatory reason relative to the October 1990 roll call, the district court's determination that these claimants were subjected to unlawful discrimination must be sustained. *See St. Mary's*, 509 U.S. at 510 n.3, 113 S. Ct. at 2748 n.3 (explaining that if trier of fact finds that prima case is supported by preponderance of the evidence, and defendant fails to meet its burden of producing evidence of non-discriminatory reason, then fact-finder must find unlawful discrimination and render verdict for plaintiff).

## B. *Damages*

That brings us to Joe's arguments regarding the damages awarded to Stratford and Romanello.[8] Joe's contends that neither Stratford nor Romanello complied with the district court's order to produce accurate tax returns, and for this reason, these

---

[8]Because we conclude that the district court's liability determination with respect to Munoz and Coyle was in error, we need not consider the damages awarded to those claimants.

claimants may not recover back pay. Additionally, Joe's maintains that the district court erred both in crediting the back pay calculation of the EEOC's expert economist and in compounding interest. These arguments are meritless and do not warrant further discussion. The district court did not abuse its discretion for any of the reasons advanced by Joe's.

Nonetheless, we must vacate the district court's award of damages as to Romanello. In calculating damages for this claimant, the district court awarded back pay beginning in October 1989. As we have explained, the only roll call within the actionable period occurred in October 1990. On remand, the district court should use this date as the starting point for its calculations of Romanello's damages. Because the district court used October 1990 as the starting point for calculating Stratford's back pay, we affirm the district court's award to this claimant.

## IV. Conclusion

We affirm the district court's judgment as to Stratford and reverse that judgment as to Coyle and Munoz. We vacate the judgment as to Romanello and remand for recalculation of damages to be awarded to her.

AFFIRMED IN PART; REVERSED IN PART; VACATED AND REMANDED IN PART.

21