[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 18, 2009
THOMAS K. KAHN
CLERK

No. 09-11072
Non-Argument Calendar

_____

D. C. Docket No. 05-00332-CV-FTM-99-DNF

RICHARD BOTELHO, JR.,

Plaintiff-Appellant,

versus

MIKE JOHANNS, Secretary,
U.S. Department of Agriculture,
Animal and Plant Health Inspection Service,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 18, 2009)

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Richard Botelho Jr. appeals the summary judgment in favor of the Secretary of the United States Department of Agriculture and against Botelho's complaint of discrimination in violation of his race and gender and of retaliation under Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e-2(a)(1), -3(a). The district court ruled that Botelho failed to exhaust his available administrative remedies for three charges and he failed to prove a prima facie case of discrimination or retaliation. We affirm.

## I. BACKGROUND

In 2000, the Department of Agriculture hired Botelho, a white male, as an animal care inspector at level GS-5. Botelho was required to inspect facilities for compliance with the Animal Welfare Act, which required him to interact with the licensed owners and operators of the facilities. In 2001, Botelho received a two-level promotion to GS-7.

In March 2002, licensee Frank Levy contacted Botelho's supervisor, Dr. Gregory Gaj, and complained that Botelho had harassed Levy and his wife. Levy alleged that Botelho had inspected Levy's facility 18 times in a period of two years; surveilled the Levys' home without scheduling a visit or inspecting the property; and trespassed on the Levys' property during which he peeped into their bedroom window. Gaj forwarded the complaint to his supervisor, Dr. Elizabeth

2

Goldentyer, who submitted the complaint for investigation to the Resource Management Systems Evaluation Staff.

The Department received two additional complaints about Botelho in March and April 2002, and those complaints were included in the Resource Management investigation. In one complaint, licensee Richard Miller reported that Botelho had been verbally abusive and had intimidated Miller. Miller also reported that, during one inspection, a lead inspector forced Botelho to remain at his vehicle because he was "out of control." Miller stated that Botelho had an unstable personality that made Miller fear for his personal safety. In the other complaint, licensee Jaynie Moon described Botelho as a "playground bully" with a "macho type hostile attitude." Moon complained that Botelho had investigated whether Moon had violated rules of a state agency and had attempted to trespass on her property. Moon also complained that Botelho had become irate and threatened Moon because she was unavailable for an inspection and Botelho had left four messages on Moon's answering machine saying, "[c]ome out, come out, I know you are in there." Moon stated that she had not encountered problems with former inspectors Christine Cox and Sylvia Taylor.

In late March, Gaj instructed Botelho to file weekly itineraries of his inspections. Dr. Gaj explained that he wanted to monitor Botelho because of the

3

complaint by licensee Moon and other complaints stemming from Botelho's inspections. In April, Botelho sent an email to another supervisor stating that he would not "tolerate the office again believing the licensee without investigating this matter. . . . They want war, they got it."

In April and May 2002, Botelho filed two charges of discrimination with the Equal Employment Opportunity Commission. In the first charge, Botelho accused Gaj and Goldentyer of discrimination based on Botelho's race and gender because they had required him to submit weekly itineraries. Botelho alleged that Goldentyer had failed to comply with department procedures to address licensee complaints. In the second charge, Botelho accused Gaj and Goldentyer of discrimination based on race and gender and of reprisal. Botelho alleged that Gaj had accused Botelho of excessive inspections, but Botelho alleged the Department had female inspectors with an equally high number of inspections who had not been investigated. Botelho also alleged that the investigation was in retaliation for his first charge of discrimination.

On June 5, 2002, Botelho received a letter from licensee, Mario Tabraue, who demanded that Botelho cease slandering Tabraue, and twelve days later, Gaj reported to a Resource Management investigator two additional complaints against Botelho. In the first complaint, a potential licensee reported that Botelho had

4

called Tabraue a "crook and a drug dealer," advised the potential licensee not to buy from Tabraue, and said he would end Tabraue's business. In the second complaint, a state wildlife agent reported that Botelho seemed obsessed with Tabraue, Botelho inquired about actions against Tabraue, and Botelho sought to have Tabraue's state permit revoked. Gaj stated that he had agreed with the wildlife agent that Botelho should not interfere with the actions of other agencies.

On June 14, 2002, Gaj wrote a letter to Botelho limiting his duties. In the letter, Gaj detailed Botelho's past conduct and explained that the conduct was "unacceptable." Gaj instructed Botelho to submit weekly itineraries; cease contact with licensees Levy, Miller, and Tabraue; report to Gaj, rather than investigate or respond to, complaints about licensees; and comply with inspection guidelines. Gaj warned Botelho that his failure to comply would result in discipline "up to and including removal from the federal service." Botelho later filed a third charge of discrimination to allege that Gaj discriminated and retaliated against him by issuing the letter.

While Resource Management was conducting its investigation, Botelho did not receive a performance rating for his service between May 2001 and April 2002. Botelho later filed a charge of discrimination complaining about the lack of an evaluation. In July 2002, Botelho became eligible for a promotion from level GS-7

5

to level GS-9.  In August 2002, Gaj and Goldentyer denied Botelho the two-step promotion.

In September 2002, another licensee reported misconduct by Botelho. Christine Camp-Scott stated that Botelho had offered to be a "really good friend[]" if Camp-Scott would provide information about other licensees and potential licensees, and Botelho warned Camp-Scott that, if she refused to comply, Botelho would make Camp-Scott's life a costly "living hell."  Camp-Scott stated that she was scared of Botelho and he had extorted money and information from her.

Botelho had earlier moved from Cape Coral, Florida, to Fort Myers, Florida. In 2003, Botelho returned to Cape Coral and requested that the Department pay for installation of a second telephone line, but the Department refused on the ground that Botelho had relocated voluntarily for a second time within his duty area. Botelho filed a fourth charge with the Commission and alleged that the Department refused to pay for the installation because of Botelho's race and gender.  The Department later reimbursed Botelho for the telephone line because he had not received a copy of the telephone fee policy.

Resource Management completed its investigation and, on July 27, 2004, the Department notified Botelho that he faced a 14-day suspension.  The Department mentioned in its letter 15 allegations of misconduct, which included charges of

6

improper investigations, trespass, unprofessional conduct, and insubordination. Botelho submitted two written responses and formal and informal oral responses.

In October 2004, Goldentyer mailed Botelho a letter that addressed Botelho's responses, made findings about each allegation of misconduct, and imposed a 14-day suspension. Goldentyer explained that the penalty was "severe enough" to "get[] [Botelho's] attention and impress . . . the need to avoid similar misconduct in the future," but "not so severe that it deprived [him] of a continued career in [his] position" with the Department. Botelho filed a fifth charge of discrimination and alleged that his suspension was attributable to discrimination and retaliation.

On March 11, 2005, Botelho moved to consolidate or amend his charges of discrimination to include three additional claims. Botelho alleged that he had been denied a promotion; he had received a second 14-day suspension in July 2005 for using vulgar language in a conversation with the Director of Resource Management; and his employer-provided laptop computer had been confiscated by the Department on February 7, 2005. The Commission refused to consolidate the charges with Botelho's pending charges because his claims had been untimely and he had engaged in "delay tactics," "evasive[ness]," and had provided "otherwise ambiguous responses" that affected the ability of the "Administrate Judge to

7

carefully decide whether claims are like and related and/or whether the claims are active or stale." The Commission also refused to consolidate or amend Botelho's charges of discrimination to include a complaint that the Department had suspended Botelho in January 2005. The Commission later dismissed all of Botelho's charges at his request so that he could pursue relief in a civil action.

Botelho filed a complaint that he had been discriminated and retaliated against by the Department. 42 U.S.C. §§ 2000e-2(a)(1), -3(a). Botelho's amended complaint mentioned seven incidents: the investigation conducted by Resource Management; the letter Gaj wrote Botelho restricting Botelho's duties; the denial of a promotion for Botelho to level GS-9; Botelho's 14-day suspension in October 2004; the refusal of the Department to pay for the installation of a second telephone line; an investigation into Botelho's employment outside the Department; his second 14-day suspension in July 2005; and the confiscation of Botelho's computer. In support of his complaint, Botelho testified in a deposition that a former partner, Sylvia Taylor, had not been disciplined even though "several dozen" complaints had been filed against her for inappropriate behavior. Botelho complained that the Department had paid to install a telephone line for Michelle Williams, a black female employee, and the Department had promoted single females who received evaluations similar to Botelho.

8

The Department moved for summary judgment. The Department argued that Botelho had failed to exhaust available administrative remedies and he had failed to prove his complaints of discrimination or retaliation. The Department offered in support of its motion its correspondence with Botelho; letters and emails about Botelho's discipline; complaints and affidavits of licensees, supervisors, and representatives of other agencies; and records of Botelho's proceedings before the Commission. The Department also submitted affidavits from two employees stating that the Department would pay to install a telephone line for one relocation within an employee's official duty area.

Botelho responded and argued that a similarly situated female investigator had behaved inappropriately, but she had not been disciplined. Botelho submitted affidavits from three licensees who had complained about investigator Sylvia Taylor. Lauri Caron stated that Taylor complained during her inspections that Caron's volunteers were untrained and uneducated; advised that Caron shave certain animals; threatened to close Caron's facility for importing chimpanzees from Waldo, Florida; stated the facility "needed to be like Disney or Bush Gardens"; and spoke negatively of other facilities. Gary Rosenblum complained that Taylor was rude and threatened to fine Rosenblum if he failed to remove his pet marmoset from his home. Pam Rosaire-Zoppe stated that Taylor criticized the

9

housing for Zoppe's champanzees and threatened to have her license revoked after improvements were made.

The district court granted summary judgment in favor of the Department. The district court found that Botelho had failed to exhaust three claims before the Commission involving the investigation into Botelho's outside employment, his second 14-day suspension, and the confiscation of his computer. The district court ruled that Botelho had failed to establish he had suffered an adverse employment action or that he had been treated differently than similarly situated female or non-caucasian employees. The district court also ruled that Botelho had failed to establish any relationship between his allegations of retaliation and actions of the Department or to establish that the legitimate, nondiscriminatory reasons for his discipline had been pretextual.

## II. STANDARD OF REVIEW

We review <u>de novo</u> a summary judgment and consider the evidence in the light most favorable to the nonmoving party. <u>Brooks v. County Comm'n of Jefferson County, Ala.</u>, 446 F.3d 1160, 1161–62 (11th Cir. 2006). Summary judgment should be entered when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Botelho challenges the decision of the district court on two grounds. First, Botelho argues that he exhausted his complaints of discrimination. Second, Botelho argues that the Department discriminated against him based on his race and gender. These arguments fail.

Botelho failed to exhaust available administrative remedies for three of his charges of discrimination. Before a plaintiff may file a charge of discrimination under Title VII, he must timely pursue and exhaust his administrative remedies. EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002). Botelho was required to submit his charge of discrimination to "a [Commissioner] counselor within 45 days of the date of the matter alleged to be discriminatory," but Botelho failed to meet that deadline regarding two of his charges. 29 C.F.R. § 1614.105(a)(1). Botelho's charge on March 11, 2005, complained about the investigation into his outside employment in 2004 and his second suspension from work on January 7, 2005. Although Botelho timely submitted his third charge about the seizure of his laptop in February 2005, he nevertheless failed to exhaust by failing to cooperate in the administrative proceedings. See Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999) (exhaustion requires the employee to make a "good faith effort" to cooperate with the agency and EEOC in the administrative

11

proceedings). The Commission refused to consider Botelho's charge based on its finding that Botelho had used "delay tactics," was "evasive," and had provided "otherwise ambiguous responses" to their inquiries, and Botelho fails to challenge that finding.

Botelho also failed to establish a prima facie case of either discrimination or retaliation by the Department. Botelho failed to prove that he had been treated different from a similarly situated female or non-caucasian employee in the Department. Botelho argues that he was disciplined for licensee complaints when a female employee, Taylor, was not penalized, but the complaints against Taylor were not "nearly identical . . . [in] quantity or quality" to the complaints against Botelho. Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 (11th Cir. 2006). Botelho also failed to establish that the legitimate reason the Department proffered for refusing to promote Botelho was a pretext for retaliation. See Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it."). The Department provided a compelling reason for its failure to promote Botelho in July 2002: Botelho had numerous complaints filed against him by licensees and he was under investigation

12

for those complaints.  Botelho failed to present evidence to rebut that legitimate reason for not promoting him.

## IV. CONCLUSION

The summary judgment in favor of the Department is **AFFIRMED**.