[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11326
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-22101-MGC

CLARA BENDER,

Plaintiff-Appellant,

versus

MIAMI SHORES VILLAGE,
a Florida Municipal Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 21, 2014)

Before TJOFLAT, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Clara Bender appeals, *pro se*, from the district court's grant of summary judgment in favor of Miami Shores Village (MSV) in her employment discrimination suit under Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3; 42 U.S.C. § 1981; and the Florida Civil Rights Act (FCRA), Fla. Stat. § 760.10.  Bender presents several arguments on appeal, which we address in turn.  After review,[1] we affirm the district court's grant of summary judgment.

## I.

Bender first contends the district court erred in concluding her claims under Title VII alleging race discrimination, religious discrimination, and retaliation, were time-barred.  Title VII requires a plaintiff exhaust certain administrative remedies, which begins by filing a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC), before filing a suit for employment discrimination.  *See* 42 U.S.C. § 2000e-5(b).  For a charge to be timely in a deferral state, such as Florida, it must be filed within 300 days of the last discriminatory act.  *See id.* § 2000e-5(e)(1).  Accordingly, only those claims arising within 300 days prior to the filing of the EEOC discrimination charge are

---

[1] We review a district court's grant of summary judgment *de novo*, viewing all evidence in a light most favorable to the non-moving party.  *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

2

actionable.  *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir.

2002).

The record shows Bender filed her EEOC charge on October 23, 2008.

Thus, with respect to all of Bender's claims that arose before December 28, 2007,

the district court did not err in finding these claims were barred by Title VII's

300-day rule.  *See id.*  Moreover, even if we assume, *arguendo*, that any of

Bender's claims, arising before or after December 28, 2007, were not otherwise

barred, Bender's challenges to the district court's grant of summary judgment are

unsuccessful, for the reasons set forth below.

## II.

Bender asserts the district court erred in concluding she failed to establish a

*prima facie* case of race discrimination, under Title VII, 42 U.S.C. § 1981, and the

FCRA.[2]  Title VII makes it unlawful for an employer to discharge or otherwise

discriminate against any individual with respect to her compensation, terms,

conditions, or privileges of employment because of her race.  42 U.S.C. § 2000e-

2(a)(1).

---

[2] The elements of a race discrimination claim under § 1981, in an employment context, are the same as a Title VII disparate treatment claim.  *Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).  Additionally, decisions construing Title VII are applicable when considering claims brought under the FCRA, which was patterned after Title VII.  *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387, 1389-90 (11th Cir. 1998).

The district court did not err in concluding Bender did not establish a *prima facie* case of race discrimination under Title VII.  First, Bender was required to show that she suffered an adverse employment action as part of her *prima facie* case.  *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (stating to prevail on a race discrimination claim based on circumstantial evidence, a plaintiff can establish a *prima facie* case of race discrimination by showing, *inter alia*, that she was: (1) subject to an adverse employment action; and (2) treated less favorably than a similarly situated employee outside her protected class).  Bender demonstrated two potential adverse employment actions:  MSV's decisions to (1) not provide her an annual performance evaluation, raise, or bonus, and (2) assign her extra workloads.[3]  *See Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006) (stating adverse employment actions include hiring, firing, failing to promote, reassignment with significantly different

---

[3]  Bender also alleged four other adverse employment actions:  (1) being demoted from her data processing position to an entry-level accounting clerk position; (2) being told she could not stay at her desk during a holiday luncheon; (3) having falsified documents placed in her personnel file; and (4) not being permitted to review her personnel file during working hours. With regard to Bender's alleged demotion, evidence showed that her change in job title did not affect her salary or benefits.  Thus, Bender's change in job title did not constitute an adverse employment action, as it did not result in a serious and material change in the terms, conditions, or privileges of her employment with MSV.  *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (explaining in order to constitute an adverse employment action, the employer's action must involve a serious and material change in the terms, conditions, or privileges of employment).  Similarly, Bender did not present any evidence that (1) Holly Hugdahl's directive that she was not allowed to stay at her desk during a holiday luncheon, (2) the placement of falsified documents in her personnel file, or (3) her being forbidden from reviewing her personnel file during work hours resulted in any material change in her salary or other terms and conditions of her employment.

responsibilities, and decisions altering compensation or causing a significant change in benefits).

Nevertheless, regardless of Bender's ability to demonstrate adverse employment actions as part of her *prima facie* case of race discrimination, the district court did not err in concluding she failed to establish a *prima facie* case because she did not show she was treated less favorably than a similarly situated MSV employee, outside of her protected class. *See Maynard*, 342 F.3d at 1289. With respect to Bender's extra workloads, evidence showed that, following the death of the finance director, all MSV finance department employees were asked to take on additional duties and responsibilities. While Bender identified Micheline Ellis as a potential comparator who received fewer assignments after she complained of a high workload, the record shows that Ellis was a recent hire, and, as such was accommodated due to her lack of experience. Thus, Bender did not identify any similarly situated employee, with a similar experience level and outside her protected class, who was not assigned additional assignments. Therefore, she failed to identify a proper comparator with respect to her extra workloads claim. *See id.* Additionally, Bender also did not identify with specificity any other employee who did not take on additional assignments as requested, who nevertheless received a performance evaluation, pay increase, or bonus. Thus, she failed to identify a proper comparator as to that adverse

5

employment action as well.  *See id.*  Accordingly, the district court did not err in concluding that Bender failed to establish a *prima facie* case of race discrimination.

### III.

Bender also asserts the court also erred in concluding that she failed to establish *prima facie* cases of religious discrimination.  Title VII makes it unlawful for an employer to discriminate against an employee on the basis of her religion. 42 U.S.C. § 2000e-2(a)(1).

The district court did not err in concluding Bender did not establish a *prima facie* case of religious discrimination under Title VII.  First, with respect to disparate treatment, Bender's allegation that Hugdahl instructed her not to use God's name in the workplace did not constitute an adverse employment action, as she presented no evidence that the director's demand resulted in a serious and material change in the terms, conditions, or privileges of her employment.  *See Maynard*, 342 F.3d at 1289; *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001).  Moreover, there is no evidence in the record that shows Bender was treated less favorably than a similarly situated, non-Christian employee.  *See Maynard*, 342 F.3d at 1289.  As such, she did not establish a *prima facie* case of religious disparate treatment.

Bender also failed to establish a *prima facie* case of a religiously hostile work environment.  The only alleged instance of religious harassment was

6

Hugdahl's directive not to use God's name in the workplace. As Bender only alleged one instance of harassment, she failed to demonstrate that she suffered harassment that was sufficiently severe or pervasive. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (stating a plaintiff may establish a hostile work environment claim under Title VII by showing "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (quotations omitted)).

IV.

Lastly, Bender contends the district court erred in granting MSV's motion for summary judgment on her Title VII retaliation claim. Title VII prohibits private employers from retaliating against an employee because she has opposed acts made unlawful by that law. 42 U.S.C. § 2000e-3(a).

The district court did not err in concluding Bender did not establish a *prima facie* case of retaliation under Title VII.[4] *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 856 (11th Cir. 2010) (stating in order to establish her *prima facie* case of retaliation, the plaintiff may show that: (1) she engaged in statutorily protected expression; (2) she suffered a materially adverse employment action; and

---

[4] As an initial matter, Bender argues, for the first time on appeal, that MSV retaliated against her by constructively terminating her employment. However, as Bender did not allege any constructive termination claim before the district court, we do not consider her claim in this respect. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

7

(3) there was a causal link between the events).  With regard to the first element of her *prima facie* case of retaliation, Bender failed to show the discrimination grievance she submitted to MSV constituted statutorily protected activity.  Specifically, Bender was required to show her belief she was discriminated against, on the basis of her race, was objectively reasonable.  *See Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (stating the plaintiff's "good faith, reasonable belief that the employer was engaged in unlawful employment practices"  must, though perhaps mistaken, be objectively reasonable).  Bender did not produce any evidence, however, showing her belief she suffered race discrimination was objectively reasonable.  Rather, she expressly admitted that neither Hugdahl, nor anyone else at MSV, ever made any derogatory comments toward her, or otherwise mistreated her, on account of her race.  Moreover, to the extent Bender alleged she was assigned extra workloads because of her race, evidence showed that, following the finance department director's death, all MSV finance department employees were asked to take on additional duties and responsibilities.  Further, to the extent Bender alleged she did not receive a merit pay increase or a bonus because of her race, evidence showed Bender was not given a raise because she did not accept additional responsibilities in order to complete MSV's 2007-2008 budget.  Under these circumstances, Bender's belief she had been subjected to race discrimination was not objectively

8

reasonable.  Accordingly, she failed to demonstrate she engaged in any statutorily protected expression.  *See id.*

Moreover, the district court did not err in finding Bender did not produce evidence demonstrating she suffered a materially adverse action.  *See Dixon*, 627 F.3d at 856.  As stated above, the record shows Bender did not receive a raise or bonus in 2007 because she did not take on any additional assignments, as all of the employees in her department were requested to do.  Thus, Bender did not establish MSV took any adverse action against her that would dissuade a reasonable employee from engaging in any protected activity.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (stating to constitute an adverse action in the context of retaliation, the action "must be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination").  As such, the district court did not err in finding Bender failed to establish a *prima facie* case of retaliation under Title VII.  Accordingly, we affirm the district court's grant of summary judgment in favor of MSV.

**AFFIRMED.**