[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13218
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cv-00088-BAE-GRS

BARTO P BENJAMIN,

Plaintiff-Appellant,

versus

SNF HOLDING COMPANY,

Defendant,

CHEMTALL INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 11, 2015)

Before ROSENBAUM, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Plaintiff Barto Benjamin appeals *pro se* from the district court's grant of Defendant Chemtall Inc.'s motion for summary judgment on Benjamin's race and age employment-discrimination claims, brought under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1).  On appeal, Benjamin contends that the evidence was sufficient for a jury to conclude that he was fired because of his race or his age.[1]  After careful review, we affirm.

## I.

Benjamin, an African-American male, was hired by Chemtall in 2006 as a warehouse manager at its facilities in Riceboro, Georgia.  Benjamin was 53 years old at the time.  Chemtall is a manufacturer that produces and ships products used to treat water.

As warehouse manager, Benjamin was responsible for the operations of the

---

[1] Benjamin also appears to challenge an interlocutory magistrate judge order denying his request to serve additional interrogatories, as well as the district court's substitution of Chemtall as the named defendant in place of SNF Holding Company, which Benjamin had named in his complaint.  Chemtall represented in its answer that it was a subsidiary of SNF Holding Company and that it was Benjamin's actual employer.

With regard to the discovery order, Benjamin did not appeal the order to the district court, so he has waived his right to appeal that order to this Court.  *See Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) ("We have concluded that, where a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waived his right to appeal those orders in this Court."); Fed. R. Civ. P. 72(a).  With regard to the substitution issue, even if any error had been committed by the district court, it would be harmless because the court properly granted summary judgment on Benjamin's claims.  *See* Fed. R. Civ. P. 61 (instructing reviewing courts to disregard all errors that do not affect the substantial rights of the parties).  We refer to the defendant as "Chemtall" throughout this opinion.

2

Warehouse Department, which included processing and shipping customer orders and developing standardized practices. In this capacity, Benjamin supervised over thirty employees. His supervisory responsibilities included training, counseling, and disciplining employees or recommending discipline for employees.

From February 2009 to April 2009, the Warehouse Department made a series of shipping errors, some of which triggered customer complaints. Benjamin does not dispute that the specific incidents occurred or that he ultimately was responsible for the errors. Specifically, the Warehouse Department shipped (1) a torn bag of product that had been repaired with duct tape; (2) a 59-drum order that was 9 drums short; (3) the wrong containers of product to Brazil and Chile, which caused the company to lose around $100,000 on additional shipping and tariff costs; (4) off-spec pallets that were not included in the customer's order; and (5) an empty tote bin to Korea without inspecting the order beforehand. Joe McCullough, Benjamin's supervisor and the Production Planning Director, testified in a deposition that the third incident in particular, involving shipping the wrong containers to Brazil and Chile, "drew a lot of attention" to the Warehouse Department from company management.

Based primarily on these shipping errors, McCullough placed Benjamin on a thirty-day "Performance Improvement Plan" ("PIP"), and they met to discuss the PIP on June 9, 2009. A contemporaneous memorandum given to Benjamin

3

regarding the PIP lists the five incidents described above and states, "You have not been monitoring the work of your employees.  As a Warehouse Department Manager, you are expected to lead your employees and to provide support and direction to them in order to meet the objectives of the company.  You have failed to do this."  The document advises Benjamin that he must "show immediate improvement and consistent results" to avoid further disciplinary action, including termination.  McCullough met with Benjamin on a weekly basis during the thirty-day PIP to discuss Benjamin's progress.  Following Benjamin's placement on the PIP, the Warehouse Department received three additional customer complaints concerning shipping errors similar to the earlier ones.

At a meeting on September 14, 2009, McCullough and a human-resources representative discharged Benjamin.  According to McCullough's deposition testimony, he terminated Benjamin because his job performance was not improving and McCullough did not believe that Benjamin could keep up with the demands of the warehouse as the company continued to grow.  The human-resources representative also stated in an affidavit that Benjamin did not make improvements after being placed on the PIP and that McCullough and other company management agreed that it would be in Chemtall's best interest to hire a new warehouse manager.  In Benjamin's termination letter, McCullough explained that customer complaints continued to originate from the warehouse with no plan

4

for improvement, and that Benjamin still was not holding his employees accountable for their actions.  Benjamin was replaced by Robert Jordan, who was thirty-five years old and white.

After his termination, Benjamin filed a charge of discrimination with the Equal Employment Opportunity Commission, and then filed suit in the United States District Court for the Southern District of Georgia.[2]  Chemtall moved for summary judgment on Benjamin's race- and age-discrimination claims.  Without responding to Chemtall's motion, Benjamin filed a motion for summary judgment on his age-discrimination claim over a month after the deadline established in a scheduling order.  The magistrate judge recommended granting Chemtall's summary-judgment motion and terminating as a nullity Benjamin's untimely motion.  According to the magistrate judge, Benjamin did not establish a prima facie case of discrimination and, even if he had, he failed to show that Chemtall's reasons for his discharge—"his poor leadership, lack of supervisory skills, and failure to perform at the level expected of a warehouse manager"—were pretextual.  The district court adopted the magistrate judge's recommendation, and this appeal followed.

## II.

---

[2]  In addition to his race- and age-discrimination claims under § 1981, Title VII, and the ADEA, Benjamin alleged claims under the Fair Labor Standards Act and 42 U.S.C. §§ 1983, 1985, and 1986.  He does not challenge the disposition of those claims on appeal.  Accordingly, those matters have been abandoned.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1211 (11th Cir. 2008). Summary judgment is appropriate if the movant shows that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Even where, as here, summary judgment is unopposed, the district court must still consider the merits of the motion. *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008). To that end, the court must, at the least, review all evidentiary materials submitted in support of the motion to determine whether they establish the absence of a genuine issue of material fact. *Id.* But the court need not conduct a *sua sponte* review of the entire record. *Id.*

**III.**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of his race. 42 U.S.C. § 2000e-2(a)(1). Similarly, 42 U.S.C. § 1981 prohibits race discrimination in employment by providing that all persons shall have the same right to make and enforce contracts as white citizens. 42 U.S.C. § 1981(a). In the employment context, the elements of a race-discrimination claim under § 1981 are the same as those in a Title VII disparate-treatment claim. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

The ADEA, in turn, makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of his age.  29 U.S.C. § 623(a)(1).  Specifically, the ADEA prohibits employment discrimination against individuals who are at least 40 years of age.  *Id.* § 631(a).

Where, as here, a plaintiff puts forth only circumstantial evidence in support of his discrimination claims, we generally apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002); *see Sims v. MVM, Inc.*, 704 F.3d 1327, 1332-33 (11th Cir. 2013) (ADEA); *Smith v. Lockheed-Martin*, 644 F.3d 1321, 1325 & n.14 (11th Cir. 2011) (Title VII and § 1981).  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.[3]  *Joe's Stone Crabs, Inc.*, 296 F.3d at 1272.  If the plaintiff establishes a prima facie case, he creates a rebuttable presumption that the employer unlawfully discriminated against him.  *Id.*  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action.  *Id.*  If the employer satisfies this burden of production, the burden shifts back to the plaintiff to demonstrate that the proffered reason is merely a pretext for unlawful discrimination.  *Id.* at 1272-73.  Although the burden

---

[3]    Generally, in a case alleging discriminatory discharge, the prima facie case is composed of the following elements:  (1) the plaintiff is a member of a protected group; (2) he was qualified for the job; (3) he was discharged; and (4) he was replaced by someone outside the protected group.  *See, e.g.*, *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (ADEA); *Jones v. Lumberjack Meats, Inc.*, 680 F.2d 98, 101 (11th Cir. 1982) (Title VII).

of production shifts back and forth, the ultimate burden of persuasion always remains with the plaintiff. *Id.* at 1273.

We affirm the district court's grant of summary judgment because the court properly found that Benjamin failed to demonstrate that Chemtall's reasons for terminating his employment were pretextual. For that reason, we need not address whether the court erred in finding that Benjamin did not make out his prima facie case of discrimination.

Here, Chemtall proffered a legitimate, nondiscriminatory reason for discharging Benjamin: poor job performance in managing the Warehouse Department. According to the evidence presented by Chemtall, which is recounted above, Benjamin's poor job performance consisted of failures to keep up with the increasing shipping demands of the growing company, to hold employees accountable, and to develop plans for improvement. In order to defeat summary judgment, Benjamin must create a genuine issue of material fact that the employer's articulated reasons were merely a pretext for discrimination. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (*en banc*). We conclude that Benjamin has not done so.

Benjamin contends that his work performance was not deficient because he instituted several cost-saving measures during his tenure that saved the company money on shipping. He also points out that he received raises in the years prior to

8

2009.[4] But Benjamin does not deny that the errors identified in the PIP occurred or that he was ultimately responsible for those errors. And the fact that he received raises in 2007 and 2008, even if they were performance based, has little relevance to events occurring in 2009 leading up to his discharge. Therefore, this evidence is insufficient to show pretext because it does not meet Chemtall's reason "head on and rebut it." *Chandler*, 229 F.3d at 1030. Benjamin cannot succeed by merely "quarreling with the wisdom" of Chemtall's reasons. *Id.*

Nor has Benjamin presented or identified any evidence to show that Chemtall was motivated by discriminatory animus. Benjamin did not contest that his replacement was qualified, and he admitted in his deposition that none of Chemtall's managers made any reference to his age or race. Benjamin also stated that he believed he was terminated due to corruption within the company and because he did not fit in with McCullough's personal agenda, undermining his assertions that he was terminated because of his race and age. And even bad reasons for discharge, so long as they are not discriminatory, are not actionable under federal employment-discrimination laws. *See id.* While Benjamin asserts that other white managers at Chemtall had more complaints than he but were not

---

[4] Chemtall contends that we should disregard certain facts relied on by Benjamin in his appellate brief because they were not introduced as evidence before the district court. *See Chapman*, 229 F.3d at 1026 ("The rule is that a federal appellate court may examine only the evidence which was before the district court when the latter decided the motion for summary judgment." (internal quotation marks omitted)). We discuss the facts in any event because they do not show that summary judgment was improper.

also fired, he has not shown that these other managers were similarly situated for purposes of comparison. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (stating that a comparator must be "nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer").

Because Benjamin has failed to establish a genuine issue of material fact that Chemtall's proffered explanation for his termination is pretext for discrimination, the district court did not err in granting summary judgment on his discrimination claims. We, therefore, affirm.

**AFFIRMED.**