[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10263
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cv-00546-SPC-MRM

COLLEEN MOORE,

Plaintiff-Appellant,

versus

SAN CARLOS PARK FIRE PROTECTION & RESCUE,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(April 1, 2020)

Before JORDAN, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Colleen Moore appeals the district court's grant of San Carlos Park Fire Protection and Rescue's ("San Carlos Park") motion to dismiss her operative complaint[1] for failure to state a claim in her sexual harassment and hostile work environment suit brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII")[2] and the Florida Civil Rights Act of 1992 ("FCRA").[3]  On appeal, Moore contends that the district court erred because she alleged discriminatory acts that were not time-barred and because she adequately stated a constructive discharge claim.[4]  We hold that the district court did not err in dismissing Moore's complaint and affirm.

## I. Background

### A.  Facts of the Case

Although this litigation commenced in October of 2017, the facts giving rise to Moore's claims date back to as early as 1991, when Moore began volunteering as a firefighter for San Carlos Park.  Moore claims that throughout her employment at San Carlos Park—beginning when she joined as a volunteer in 1991 and continuing during her employment as a full-time firefighter from 1993 through

---

[1] The operative complaint is Moore's third and final amended complaint, which she filed on March 7, 2018 (and varies only slightly from the initial complaint).  Her EEOC charge was attached to it.
[2] Codified at 42 U.S.C. § 2000e.
[3] Codified at Fla. Stat. § 760.
[4] Moore does not challenge the district court's denial of her motion for leave to amend her complaint a fourth time because "allowing her to amend would be futile and unduly prejudicial to San Carlos."

2013—she "was subjected to repeated and pervasive comments and behavior because of her sex by agents of [San Carlos Park], who at all relevant times had the authority or apparent authority to hire, promote, discipline and/or fire employees."

Moore resigned on November 5, 2013, after more than 20 years of service. Following her resignation, on February 27, 2014, Moore filed a charge of discrimination with the EEOC, alleging discrimination based on gender and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("EEOC charge").  Moore submitted the following statement in her EEOC charge:

> I am a Female.  I was employed by the Respondent for 20 years.  I was subjected to a hostile work environment fduring [sic] my entire employment because of my gender.  I was harassed, called "the girl" and disciplined for incidents that other male employees are not disciplined for.  On or about February 2010, I was demoted because I did not send a male Driver Engineer to take a drug test.  I filed a grievance and won my rank back in 2011 with complete back pay.  During my demotion I took the Lieutenant and the Battalion Chief test and when I was made whole I became the Battalion Chief.  On or about August 2013, Gene Rison was selected as Assistant Chief.  Since that time, I have been suspended for two days without pay, disciplined and written up and forced to resign from my position.  I was forced to resign because I was demoted from Battalion Chief down 2 ranks and 9 steps to Firefighter 4.
>
> I was told by Gene Rison that I was being demoted due to neglect of duty and my probationary status.
>
> I believe that I have been discriminated against because of my gender and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

3

While her EEOC charge generally claims she suffered a hostile work environment during her entire twenty-year employment, the earliest specific instance of discrimination she alleged occurred on February 1, 2010 and the latest took place on November 5, 2013.[5]

In its response to Moore's charge, the EEOC indicated that it was unable to conclude that the information Moore had provided established a violation of the relevant statutes.

On October 5, 2017, Moore filed her original complaint against San Carlos Park. Her operative complaint sounds in three counts: Employment Discrimination Due to Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992 (Count One): Sexual Harassment (Count Two); Retaliatory Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964 (Count Three); and Constructive Discharge (Count Four). In support of these counts, Moore alleges as follows:

> Because of her sex, SCPF supervisory employees participated in a continuing series of severe and pervasive acts of disparate treatment towards [Moore], creating a continuing hostile working environment throughout her entire employment, including but not limited to these incidents:
>
> a. Continuous jokes and comments regarding [Moore's] sex by supervisors.
> b. One supervisor regularly stroked [Moore's] hair in the presence of others.

---

[5] Moore resigned on November 5, 2013.

4

c. Another supervisor repeatedly and unwarrantedly singled out [Moore] for warnings regarding the length of her hair.

d. Two other supervisors subjected [Moore] to unwelcome physical and sexual advances.

e. Another supervisor subjected [Moore] to tasks as a fire inspector, requiring [Moore] to be on her feet for long periods of time during the third trimester of her pregnancy instead of the typical "light duty" tasks similarly situated male firefighters were assigned.

f. SCPF supervisors subjected [Moore] to discriminatory treatment upon her return from leave after the birth of her son.

g. SCPF changed the longstanding rules of examination for promotion in order to discriminate against [Moore].

h. SCPF supervisors intentionally delayed [Moore's] receipt indicia of rank because of her sex.

i. Supervisors subjected [Moore] to unnecessary and unwarranted criticism and instruction regarding the length of her hair.

j. SCPF gave [Moore] repeated counseling and/or other discipline more severe than any received by any SCPF male firefighter employee for similar minor infractions.

k. Supervisors placed [Moore] in position requiring her to work as subordinate to employees [Moore] had once supervised.

l. Supervisors instructed [Moore] not to wear uniform items that her to wear during promotion examinations, thus setting her apart from all the other candidates.

m. Contrary to long standing policy, supervisors denied [Moore] a shift change at her promotion to Battalion Chief to undermine her new supervisory status.

n. One supervisor instructed his subordinates not to trade shifts with firefighters on [Moore's] shift to limit opportunities to have time off work, effectively making the working environment on [Moore's] shift less desirable for others, thereby causing resentment among those so assigned.

o. One supervisor continued his practice of referring to [Moore] as the "girl" for years, even after she was promoted to Battalion Chief and effectively was the same rank as that supervisor.

5

p. SCPF supervisors refused to allow other employees to socialize with [Moore] while on shift, effectively isolating [Moore] from all other employees.

q. [Moore's] immediate supervisor removed [Moore] from acting Battalion Chief status, contrary to longstanding procedures.

r. Supervisors denied [Moore] requested training in preparation for her role as a Battalion Chief.

In support of her sexual harassment claim, Moore claims that:

On one occasion early in her career at SCPF, one supervisor sequestered [Moore] in a locked room alone, grabbed her, kissed her, and placed his hand under [Moore's] shirt, touching her chest, stomach and breasts, without permission or acquiescence.

And,

[i]n 2010, a fire inspector grabbed [Moore's] buttocks in front of her entire crew during a briefing. [Moore] immediately removed him from the room and instructed him that she would not tolerate such behavior, signaling the unwelcome nature and rejection of the sexual advance.

Moore further claims that San Carlos Park retaliated against her for initiating formal grievances regarding the alleged discriminatory acts. She bases her retaliation claim on her February 2010 demotion:

On February 18, 2010, [Moore] was demoted. [Moore] grieved that demotion as permitted in her employment contract. At arbitration, the arbitrator found that the demotion was more severe than the punishment received by similarly situated males, whereupon SCPF was instructed to reinstate [Moore] to the rank and tenure MOORE earned prior to the disparate treatment.

She also mentions a later demotion at an unspecified date:

As discipline for the minor infractions, her supervisor again demoted MOORE to the rank of firefighter and assigned her to be a subordinate

6

to the same supervisor responsible for unwanted sexual advances and who had demeaned MOORE throughout her career by referring to her as "the girl."

Finally, Moore alleges that "[t]he practices and actions of SCPF's supervisors and decision makers, including the threats of increased hostility, caused [her] great emotional distress." As a result, she claims that:

> Upon advice of her psychiatrist, [she] resigned on November 5, 2013. The continuing inescapable harassment and hostility [she] experienced and would experience in lieu of her resignation was so severe that [her] resignation operates as a constructive discharge.

While her complaint lists a number of incidents she alleges amount to sexual harassment and a hostile work environment over the course of her career, she provides little context for these allegations. All but three of Moore's allegations lack dates. Two of these incidents—one of the alleged demotions and an incident where a fire inspector groped her from behind—occurred at some point in 2010. She also alleges that her 2013 resignation operated as a constructive discharge. While she identifies one supervisor in her EEOC charge, Moore does not identify who committed any of the acts outlined her complaint, generally referring to the alleged wrongdoers as "supervisors."

B. Procedural History

This case comes to this Court early in the life of the litigation, but the procedural history is lengthy, repetitive, and, for the purposes of the analysis below, unnecessary to address in detail; a brief summary suffices. On October 5,

7

2017, Colleen Moore filed her first complaint against her former employer, San Carlos Park, alleging violations of Title VII and FCRA. The district court allowed Moore to amend her complaint three times. Each time, in lieu of an answer, San Carlos Park moved to dismiss Moore's complaint as untimely under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because it depended exclusively on factual allegations that occurred outside of the applicable statute of limitations—some apparently dating back to when Moore first joined the San Carlos Park Fire Department in 1993.

Upon the filing of Moore's third amended complaint, the district court granted San Carlos Park's motion to dismiss with prejudice. It found that Moore's claims based on (1) hostile work environment (Count I); (2) sexual harassment (Count II); and (3) retaliatory hostile work environment (Count III) failed because Moore had "not identified a single act falling within the limitations period." The district court observed that "[a]t best, Moore offers a vague statement that some unidentified timely acts are sufficiently related to her hostile work environment to bring her entire twenty-year tenure into play." And as for Moore's constructive discharge claim (Count IV), the district court determined that Moore did "not allege facts showing that a reasonable person in the same situation would find her working conditions intolerable," and therefore dismissed it. After the district court denied her motion for reconsideration, Moore appealed.

8

## II.  Discussion

Moore raises two arguments on appeal.  First, Moore claims the district court erred in dismissing her hostile work environment and sexual harassment claims (Counts I–III) as time-barred.  She contends that even if the underlying events occurred outside of the limitations period, she also alleged events that took place within the limitations period and those events established a continuing violation.  Second, Moore argues the district court improperly dismissed her constructive discharge claim (Count IV).  Here she argues that, as a component of her other claims, she alleged facts sufficient to show she was suspended and demoted because of her sex.  We review *de novo* the district court's dismissal pursuant to Rule 12(b)(6)*, see Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003), and affirm the district court's dismissal of all four claims.

When considering a motion to dismiss under Rule 12(b)(6), the reviewing court must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A district court should nevertheless dismiss a claim where a party does not plead facts that make the claim facially plausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct.  *See Iqbal*, 556 U.S. at 678.

9

Title VII prohibits an employer from discriminating against an individual "with respect to [her] compensation, terms, conditions, or privileges of employment" because of the individual's sex.  42 U.S.C. § 2000e-2(a)(1).  Title VII's prohibition encompasses various forms of sexual harassment, including a hostile work environment.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (Title VII's prohibition on discrimination includes the creation of a hostile work environment).  Relatedly, Title VII recognizes a claim for retaliatory hostile work environment.  *See Gowski v. Peake*, 682 F.3d 1299, 1311–12 (11th Cir. 2012).

Before a plaintiff may bring suit under Title VII, she must exhaust her administrative remedies.  *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).  The plaintiff initiates the administrative process by timely filing a charge of discrimination.  *See* 42 U.S.C. § 2000e–5(b); *Wilkerson*, 270 F.3d at 1317.  A plaintiff in Florida must file an administrative charge of discrimination within 300 days of the last discriminatory act.[6]  *See* § 2000e-5(e)(1); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) ("For a charge to be timely in Florida, a deferral state, it must be filed not more than 300 days after the alleged

---

[6] Florida is a "deferral state," meaning it has an entity "with the authority to grant or seek relief" for allegedly unlawful employment practices.  42 U.S.C.A. § 2000e-5.  In states with such entities, an employee must file the charge with the EEOC within 300 days of the objectionable employment practice.  *Morgan*, 536 U.S. at 109.  In states without such entities, an employee must file the EEOC charge within 180 days.  *Id.*

unlawful employment practice occurred."); *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (same).

The timeliness rules differ for discrete acts of discrimination and hostile work environment claims.  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113.  Discrete acts are "easy to identify" and include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Id.* at 102.

In contrast, "[a] hostile work environment claim is composed of a *series* of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (quoting § 2000e–5(e)(1)).  As the Supreme Court has explained:

> It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period.  *Provided that an act contributed to the claim occurs within the filing period*, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.* (emphasis added).  Also, a hostile work environment claim can be a combination of discrete acts and non-discrete acts in certain circumstances.  *See*

11

*Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) ("Where the discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim, it can form the basis for consideration of untimely, non-discrete acts that are part of the same claim.").

In situations where discrete and non-discrete acts make up a hostile work environment claim, the "pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim." *Id.* The Supreme Court has indicated that acts may be part of the same unlawful employment practice if the "pre- and post-limitations period incidents involve the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Morgan*, 536 U.S. at 120; *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017), as revised (Mar. 13, 2017) (focusing on same features); *Baird v. Gotbaum*, 792 F.3d 166, 169 (D.C. Cir. 2015) (same).

A. Hostile Work Environment Claims

We first consider whether the district court erred in dismissing Moore's claims that she was subjected to employment discrimination and retaliation due to a hostile work environment.

Moore's complaint only alleges one timely act. Because Moore filed her EEOC charge on February 27, 2014, Title VII requires that she allege

12

discriminatory acts which occurred on or after May 3, 2013—in other words, within 300 days from the date of her EEOC charge. *See* § 2000e-5; *Joe's Stone Crabs, Inc.*, 296 F.3d at 1271. Three factual allegations in the complaint include references to dates. But two of those allegations concern incidents that occurred in 2010—years before the applicable cutoff date. The only remaining dated allegation—that she was constructively discharged sometime 2013—constitutes a timely adverse act.

Moore also points us to her EEOC charge attached to her complaint, which alleges two timely adverse acts—discipline and demotion. The EEOC charge states that she was suspended and forced to resign at some point during or after August 2013 when:

> Gene Rison was selected as Assistant Chief. Since that time, I have been suspended for two days without pay, disciplined and written up and forced to resign from my position. I was forced to resign because I was demoted from Battalion Chief down 2 ranks and 9 steps to Firefighter 4.

Moore's complaint and EEOC charge, taken together, indicate that three timely adverse employment actions occurred in 2013: Moore's demotion, suspension, and constructive discharge. While timely, however, these adverse employment actions alone do not demonstrate a hostile work environment. Accordingly, we turn to whether any of the untimely acts contained in her complaint and EEOC charge are "sufficiently related" so that they "may fairly be

considered part of the same [hostile work environment] claim." *Chambless*, 481 F.3d at 1350.  But the allegations in the complaint are so vague that it is practically impossible for a court to determine whether Moore's claims that she was suspended, demoted, and constructively discharged are "sufficiently related" to any of the vague factual allegations of discrimination.  *Chambless*, 481 F.3d at 1350; *see also Morgan*, 536 U.S. at 120 ("A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.").  While the complaint lists a series of discrete acts, it does not provide the dates of those acts or mention the supervisor responsible for any alleged acts.  Similarly, her EEOC charge alleges Moore was harassed, called "the girl," and disciplined more severely than men, but does not provide any details supporting those allegations.  Without connecting names or dates to each incident, we cannot determine who committed the acts or when they were committed.  *See Morgan*, 536 U.S. at 120.  Thus, Moore has not established that the three timely adverse acts are sufficiently related to any of the other complained of acts, such that they support the same hostile work environment claim.

Accordingly, the timely adverse acts in the complaint and EEOC charge, considered along with Moore's untimely allegations, do not allow Moore to proceed with a hostile work environment claim.

14

B. Sexual Harassment Claim

We next consider whether Moore has alleged actionable discrete acts that may establish a claim for sexual harassment. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" must fall within the limitations period to be actionable. *Morgan*, 536 U.S. at 114. Again, the only timely acts Moore alleges are her suspension, demotion, and constructive discharge, but she does not tie these actions to sexual harassment. To the contrary, according to her EEOC charge, Gene Rison told Moore that she "was being demoted due to neglect of duty and [her] probationary status." Further, her complaint broadly states that San Carlos subjected her "to a severely hostile working environment over her entire career as a firefighter with SCPF's history of sexual harassment, retaliation and disparate treatment of [her] due to her sex. However, "[a]n introductory conclusion cannot take the place of factual allegations in stating a plausible claim for relief." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300–1301 (11th Cir. 2010). And the only factual allegations supporting Moore's sexual harassment claim are vague and untimely. Because her complaint, together with her EEOC charge, does not plausibly allege that anyone at San Carlos Park harassed Moore because of her gender within the applicable limitations period, the district court did not err in dismissing Moore's sexual harassment claim.

C. Constructive Discharge Claim

15

Moore's remaining argument is that the district court erred in ruling that she failed to plead any facts showing that she was constructively discharged. The threshold to prove constructive discharge is "quite high"—even "higher than the standard for proving a hostile work environment." *Hipp*, 252 F.3d 1208, 1231 (11th Cir. 2001). To succeed on a constructive discharge claim, a plaintiff must show "that working conditions were 'so intolerable that a reasonable person in [her] position would have been compelled to resign.'" *Id.* (quoting *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997)). "In evaluating constructive discharge claims, [courts] do not consider the plaintiff's subjective feelings. Instead, [they] employ an objective standard." *Id.* In determining whether a reasonable person would be compelled to resign, courts consider the amount of time between the objectionable acts and the constructive discharge, with a longer gap cutting against reasonableness. *See Spence v. Maryland Casualty Co.*, 995 F.2d 1147 (2nd Cir.1993) (no constructive discharge where harassment had ceased several months before he stopped working); *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311 (11th Cir.1989) (no constructive discharge where harassment stopped several weeks before the employees resigned).

Moore has not pled facts sufficient to support a claim for constructive discharge. As we noted in analyzing Moore's other claims, the allegations in

Moore's complaint are extremely vague: most do not reference specific dates or circumstances in which the allegedly discriminatory acts occurred. Moore claims she was constructively discharged when she resigned on November 5, 2013. She alleges that she was demoted twice—once sometime in 2010 and again in August 2013—and groped at some point in 2010. She has alleged numerous additional discriminatory acts without mentioning perpetrators or dates when these acts occurred. With at least a three-month gap between her latest demotion and her resignation, and with no way of determining when the other discriminatory acts occurred, we cannot determine whether a "reasonable person in [her] position would be compelled to resign." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir. 1989).

For the reasons stated above, the district court did not err in dismissing Moore's complaint.

**AFFIRMED.**